**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| POWER HOME SOLAR, LLC, | Case No. 22-50228 |
| Debtor. | |

**MOTION OF AFCO CREDIT CORPORATION FOR AN ORDER**
**GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO**
**11 U.S.C. § 362(d) AND BANKRUPTCY RULE 4001(a)**

AFCO Credit Corporation ("AFCO"), by and through its undersigned counsel, respectfully moves this Court for the entry of an order allowing relief from the automatic stay pursuant to 11 U.S.C. § 362(d), *nunc pro tunc* to October 7, 2022, as to the Finance Agreements (as defined herein), to permit AFCO to cancel certain insurance policies whose unearned insurance premiums (the "Unearned Premiums") secure a loan that AFCO made to Power Home Solar, LLC (the "Debtor") for payment of those insurance policies.  AFCO is not adequately protected, Debtor lacks equity in the Unearned Premiums, and the Unearned Premiums are not necessary for reorganization.  Accordingly, relief from the automatic stay is appropriate.  In support of this Motion, AFCO states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding according to 28 U.S.C. § 157(b), and venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      AFCO consents to the entry of a final judgment or order with respect to the Motion if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory predicate for the relief requested herein is section 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), and the relief is warranted under Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-1 of the Rules of Practice and Procedure of the United States Bankruptcy Court for the Western District of North Carolina (the "Local Rules").

### BACKGROUND

4.      On October **7**, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter **7** of the Bankruptcy Code (the "Bankruptcy Case").

5.      Prior to the Petition Date, Debtor entered into three (3) Commercial Insurance Premium Finance and Security Agreement:  the *first*, dated December 6, 2021 (the "First Finance Agreement"); the *second*, dated March 7, 2022 (the "Second Finance Agreement"); and, the *third*, dated June 21, 2022 (the "Third Finance Agreement" and, collectively with the First Finance Agreement and the Second Finance Agreement, the "Finance Agreements") with Talbot Premium Financing, LLC ("Talbot") for its auto, workers compensation, excess liability, general liability, property, executive risk package, errors and omissions, cyber liability, and professional liability (collectively, the "Financed Policies").  A true and correct list of the Financed Policies is attached as **Exhibit A**.

6.      AFCO subsequently acquired the Finance Agreements from Talbot as evidenced by that Notice of Acceptance dated December 14, 2021, attached as **Exhibit B**.

7.      Under the First Finance Agreement, attached as **Exhibit C**, AFCO made a loan to Debtor in the total amount of $5,103,529.68 to pay the insurance premiums for the following

Financed Policies:   Policy Nos. 22CSF WQ0262; P0010024416303; GVE10236503; XLS0121351; ELD30002140701; IEPICCD93L001; IEELCASCD93O001; AEC863276600; 6078558504.

8.      Pursuant to the First Finance Agreement, Debtor made a down payment in the amount of $468,026.73 and was required to make eleven (11) monthly payments in the amount of $468,026.73 to AFCO, commencing December 15, 2021, and a final eleventh (11th) payment on October 15, 2022.

9.      Under the Second Finance Agreement, attached as **Exhibit D**, AFCO made a loan to Debtor in the total amount of $157,045.63 to pay the insurance premiums for the following Financed Policies:  Policy Nos. 8258-0187; 121CTR0167463-02; and 2-CIA-NC-17-S0105627.

10.     Pursuant to the Second Finance Agreement, Debtor made a down payment in the amount of $43,215.19 and was required to make eight (8) monthly payments in the amount of $19,754.95 to AFCO, commencing March 15, 2022, and a final eighth (8th) payment on October 15, 2022.

11.     Under the Third Finance Agreement, attached as **Exhibit E**, AFCO made a loan to Debtor in the total amount of $4,953.04 to pay the insurance premiums for the following Financed Policies:  Policy No. MML-23823-22.

12.     Pursuant to the Third Finance Agreement, Debtor made a down payment in the amount of $1,362.96 and was required to make five (5) monthly payments in the amount of $994.99 to AFCO, commencing May 15, 2022, and a final fifth (5th) payment on September 15, 2022.

13.     The Finance Agreements are governed by law of the State of North Carolina.  *See* Finance Agreements, § 13.  Under the terms of the Finance Agreements and applicable state law,

Debtor granted AFCO a security interest in any and all Unearned Premiums that may become payable under the Financed Policies to secure the obligations of Debtor to AFCO under the First Finance Agreement.  Additionally, Debtor irrevocably appointed AFCO as Attorney-in-Fact for Debtor with full authority to effect cancellation of the Financed Polices.  Further, AFCO has the right to cancel the Financed Policies to obtain all of the Unearned Premiums under the Financed Policies, to retain the sums due to AFCO, and to the return any excess to Debtor.

14.     As of the date of this Motion, the Debtors have made the down payment and ten (10) monthly payments under the First Finance Agreement; the down payment and seven (7) monthly payments under the Second Finance Agreement; and the down payment and five (5) monthly payments under the Third Finance Agreement.

15.     The next and final payment under the First and Second Finance Agreements is due on October 15, 2022, which, upon information and belief, AFCO understands neither Debtor nor the Trustee will be paying going forward.

16.     As of the filing of this Motion, the total amount due and owing to AFCO under the Finance Agreements is at least $487,623.63.  The amount of AFCO's interest in the Unearned Premiums decreases every day, as funds are applied daily to the premiums of the Financed Policies. The Debtor's failure to observe their obligations under the Finance Agreements necessitate the relief sought herein.

17.     Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 4001(a)(3).

18.     Because the value of AFCO's collateral is decreasing every day, AFCO would be prejudiced by a delay in the effectiveness of an order granting stay relief.  Accordingly, AFCO respectfully requests that this Court grant such relief effective immediately.

19.     AFCO has discussed this Motion with Debtor's counsel and the Chapter 7 Trustee and understands that the Debtor and the Chapter 7 Trustee do not consent to the relief sought herein.

## BASIS FOR RELIEF

**I.     AFCO Is Entitled to Adequate Protection For Its Security Interest In The Unearned Premiums.**

20.     AFCO is a secured creditor with a first priority security interest in the Unearned Premiums, which it perfected upon entering into the Finance Agreements and funding the Financed Policies.  See N.C. Gen. Stat. § 58-55 et seq.; In re Universal Motor Express, Inc., 72 B.R. 208, 1987 Bankr. LEXIS 468 (Bankr. W.D.N.C. 1987) (holding that, under North Carolina law, there is no requirement that any right to unearned premiums in a premium financing agreement be perfected in any manner).

21.     Courts uniformly have held that a creditor such as AFCO need not file a UCC financing statement to perfect its security interest in unearned premiums; rather, a security interest in unearned premiums attaches and is perfected upon the execution of the security agreement or the funding of the policy.  *See, e.g.*, *In re St. James Inc*., 402 B.R. 209, 215 (Bankr. E.D. Mich. 2009) (noting that under section 500.1512, the security interest attached and was perfected when finance agreements were made and loans made thereunder were funded); *In re Alabama Aircraft Indus., Inc.*, No. 11-10452(PJW), 2013 WL 6332688, at *3 (Bankr. D. Del. Dec. 5, 2013) (discussing "secured status" of premium finance company); *Am. Bank, FSB v. Cornerstone Community Bank*, 903 F. Supp. 568, 575 (E.D. Tenn. 2012) ("Nonetheless, the vast majority of

courts which have addressed whether the insurance exclusion provision of Article 9 applies to transactions in the premium finance insurance company context have found the insurance exclusion provision prohibits the application of Article 9 to any transaction stemming from a premium financing company insurance transaction or any transaction involving collateral consisting of unearned insurance premiums within that context."); *In re Barton Indus.*, 104 F.3d 1241, 1246 (10th Cir. 1997) ("Article 9 of the [UCC] does not directly apply in this case because the security interests were 'in or under [a] policy of insurance' . . . [w]here the [UCC] is inapplicable, security interest disputes may be resolved by reference to [ ] existing statutes and pre-code case law"); *In re Expressco, Inc.*, 99 B.R. 395, 396 (Bankr. M.D. Tenn. 1989) (noting the exclusion "expressly excludes transactions related to insurance from the operation of Article 9" and "applies to insurance premium financing agreements); *see also In re JII Liquidating, Inc.*, 344 B.R. 875, 882-884 (Bankr. N.D. Ill. 2006) (stating that cases have uniformly held that Article 9 of the UCC does not apply to a security interest in unearned insurance premiums); *In re Teligent Inc.*, 377 B.R. 39, 44 (Bankr. S.D.N.Y. 2005) (same applying New York and Virginia law).

## II.    AFCO's Interest In The Unearned Premiums Is Not Adequately Protected.

22.    Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]" 11 U.S.C. § 362(d)(1).  Where adequate protection is lacking, the court "shall" grant relief from the automatic stay.  *See* 11 U.S.C. § 362(d); *In re Phoenix Steel Corp.*, 39 B.R. 218, 234 (D. Del. 1984) (granting relief from automatic stay where there was "no equity cushion or offer of substitute collateral in sufficient amount").

23.    The Debtor has the burden of proving the absence of "cause" for relief from the automatic stay.  *See In re Aardvark, Inc.*, 1997 WL 129346, at *4 (D. Del. Mar. 4, 1997) (quoting *In re Phoenix Pipe & Tube, L.P.*, 154 B.R. 197, 198 (Bankr. E.D. Pa. 1993)); *In re White*, 2004

WL 825847, at *2 (Bankr. D. Colo. Mar. 12, 2004); 11 U.S.C. § 362(g).  Here, the Debtor cannot

meet its burden of proving the absence of "cause" because AFCO's interest in the Unearned

Premiums is not adequately protected due to the lack of equity in the unearned premiums and, on

information and belief, the Debtor's inability (or unwillingness) to make the final payment due

October 15, 2022.  *See JII Liquidating*, 344 B.R. at 890 (terminating the automatic stay because

the creditor "has not received any adequate protection for its security interest in the unearned

premiums.").

24.     AFCO further lacks adequate protection for its security interest in the Unearned

Premiums under Section 362(d)(1) because the Unearned Premiums are decreasing since funds are

applied by the insurers to premiums of the Financed Policies as they become due.  Accordingly,

the value of AFCO's interest in its collateral, the Unearned Premiums, is decreasing every day due

to the use of the Unearned Premiums on Debtor's behalf.  As such, good cause exists to terminate

the automatic stay, *nunc pro tunc* to October 7, 2022, as to the Finance Agreements.  The failure to

grant the requested relief *nunc pro tunc* will cause unnecessary cost (or loss of collateral) to AFCO,

thereby increasing AFCO's claim (including administrative expenses) in the Debtor's estates or

reducing the amount of any surplus proceeds.

**III.    The Debtor Has No Equity In The Financed Policies Or Unearned Premiums
And They Are Not Necessary To An Effective Reorganization.**

25.     Section 362(d)(2) of the Bankruptcy Code provides that relief from stay may also

be granted where a debtor does not have any equity in the property in question and such property

is not necessary to an effective reorganization.  11 U.S.C. §362(d)(2).

26.     "A secured creditor seeking relief from the stay under section 362(d)(2) must show

(1) the amount of its claim; (2) that its claim is secured by a valid, perfected lien in property of the

estate; and (3) that the debtor lacks equity in the property."  *In re Kaplan Breslaw Ash, LLC*, 264

B.R. 309, 322 (Bankr. S.D.N.Y. 2001); *see also In re Continental Airlines*, 134 B.R. 536, 542 (Bankr. D. Del. 1991).

27.     The total amount due and owing to AFCO under the Finance Agreements is at least $487,623.63.

28.     Further, as discussed, above, AFCO is a secured creditor with a valid, perfected lien.

29.     Finally, the Debtor cannot satisfy its burden of proving that the Financed Policies and Unearned Premiums are necessary for reorganization as Debtor is a debtor under chapter 7 of the Bankruptcy Code.  11 U.S.C. § 363(g); *see In re Mullock*, 404 B.R. 800, 805 (Bankr. E.D. Pa. 2009); *In re Diversified Energy Ventures*, 11 B.R. 712, 717 (Bankr. W.D. Pa. 2004).  This burden requires proof that "the property is essential for an effective reorganization that is in prospect."  *In re Swedeland Devel. Group, Inc.*, 16 F.3d 552, 567 (3d Cir. 1994) (citing *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988)); *see also In re Bovino*, 496 B.R. 492, 507 (Bankr. N.D. Ill. 2013) ("To prevent stay from being lifted based upon its lack of equity in property securing the moving creditor's claim, debtor must show that reorganization is impossible without this property, and that it can propose a feasible plan within a reasonable time.").

30.     Based on the Debtor's filing a chapter 7 case, it is clear that the Financed Policies and Unearned Premiums are not necessary for an effective reorganization.  Therefore, relief from the automatic stay is warranted.  Alternatively, AFCO is entitled to other adequate protection under section 361 of the Bankruptcy Code sufficient to ensure the value of AFCO's secured position as of the commencement of this Bankruptcy Case.

31.    To the extent the recovered Unearned Premiums exceed the indebtedness owed under the Finance Agreements, AFCO would turn over the recovered Unearned Premiums to the Debtor for the benefit of the Debtor's estates and creditors.

WHEREFORE, AFCO respectfully requests that the Court enter an order, (i) granting the Motion; (ii) terminating the automatic stay, *nunc pro tunc* to October 7, 2022, as to the Finance Agreements, to allow AFCO to exercise its rights and remedies under applicable non-bankruptcy law in connection with the Finance Agreements and the Financed Policies, including cancelling the Financed Policies under the Finance Agreements effective as of October 7, 2022, recovering the Unearned Premiums, and applying the Unearned Premiums to the indebtedness owed under the Finance Agreements; (iii) waiving the fourteen-day waiting period described in Bankruptcy Rule 4001(a)(3); (iv) waiving all notice and waiting periods under the Finance Agreement and other applicable law; and (v) granting such additional relief to AFCO as is appropriate.

Dated:  October 14, 2022    Respectfully submitted,

**HOWARD, STALLING, FROM, ATKINS, ANGELL & DAVIS, P.A.**

By:    s/Savannah Elaine Lavender
Savannah Elaine Lavender, Esq.
N.C. State Bar No. 57970
James B. Angell
N.C. State Bar No. 12844
P.O. Box 12347
Raleigh, NC 27605
Telephone: 919-821-7700
jangell@hsfh.com
slavender@hsfh.com

*Counsel to AFCO Credit Corporation*

EXHIBIT A

**Power Home Solar, LLC  List of Policies**

| Policy Type | Policy Number |
| --- | --- |
| Auto | 22CSFWQ0262 |
| Workers Compensation | 22CSFWQ0263 |
| Excess Liability | P00100024416303 |
| Excess Liability | GVE100236503 |
| Excess Liability | XLS0121351 |
| Excess Liability | ELD30002140701 |
| General Liability | IEPICCD93L001 |
| General Liability | IEELCASCD93O001 |
| Excess Liability | AEC863276600 |
| Property | 6078558504 |
| Executive Risk Package | 8258-0187 |
| Errors and Omissions | 121 CTR 0167463-02 |
| Cyber Liability | 2-CIA-NC-17-S0105627 |
| Professional Liability | MML-23823-22 |

EXHIBIT B


**Insurance Premium Finance**

**NOTICE OF ACCEPTANCE**
**STATEMENT CUSTOMERS**

AFCO
5600 N. RIVER ROAD  SUITE 400
ROSEMONT, IL  60018-5187

DATE:   12/14/2021

INSURED: **Power Home Solar, LLC**
**919 NORTH MAIN ST**
**MOORESVILLE NC  28115**

THE PREMIUM FINANCE AGREEMENT YOU
HAVE ENTERED INTO WITH
TALBOT PREMIUM FINANCING, LLC
HAS BEEN ACQUIRED BY AFCO CREDIT CORP.
AFCO WILL SERVICE THE BILLING AND
COLLECTION OF YOUR ACCOUNT. PLEASE
MAKE ALL FUTURE PAYMENTS PAYABLE TO
AFCO.

ACCOUNT #:   01-54600367-84                    PHONE:   1-704-288-3763

Dear Insured:

AFCO is pleased to inform you that your insurance premium finance agreement has been accepted.
AFCO appreciates this opportunity to serve you.

Certain information from your finance agreement is detailed below for your review.  If you note any discrepancies,
please contact AFCO immediately at  1-877-701-1212.

| | | | | |
|---|---|---|---|---|
| **CASH PRICE** | $ | 5571,556.41 | **PAYMENT AMOUNT** | $      468,026.73 |
| **DOWN PAYMENT** | $ | 468,026.73 | **1ST DUE DATE** | 12/15/2021 |
| **AMOUNT FINANCED** | $ | 5103,529.68 | **TOTAL NUMBER OF** | |
| **FINANCE CHARGE** | $ | 44,764.35 | **PAYMENTS** | 11 |

Your loan will be repaid in  11 payments of   $  468,026.73    . Your next due date is   12/15/2021.
Approximately    25 days before each payment due date, AFCO will send you an Advice of Payment Due
and a return envelope for your convenience.

Prompt remittance of all payments when due is essential.  If a payment is late, you may incur a late fee.
Non-payment can result in the cancellation of your insurance.  Therefore, please instruct your Accounts Payable
Department to forward all payments directly to  AFCO (not your agent)  to be received no later than the due date
shown. You are obligated to make such payments even if you do not receive the Advice of Payment Due.

If you believe your payment will be late, you may make your payment on-line or send it via the overnight courier
of your choice to:
**AFCO**
**5600 N. RIVER ROAD  SUITE 400**
**ROSEMONT, IL  60018-5187**

If you have any questions, please call AFCO at  **1-877-701-1212**      and have your account number available.

**FOR IMMEDIATE ACCOUNT INFORMATION AND TO MAKE YOUR PAYMENT ON-LINE:**
**Access our Website at  myAFCO.com**

Thank you for choosing AFCO.

Sincerely,

AFCO Customer Service

INSURANCE AGENT -
**LOCKTON COMPANIES LLC**

TALBOT PREMIUM FINANCING, LLC
3657 BRIARPARK DR, STE 700, HOUSTON, TX 77042

Pg. 1 of 2

**COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT**

11/29/2021 5,103,529.68

| | Contract Number |
|---|---|
| Agent Number | Quote Number |
| TPF04 | 2121361A-5 |

| Name and Address of Insured (Exactly as Shown on Policy) ("Insured") | Name and Address of Insured's Agent ("Agent") |
|---|---|
| POWER HOME SOLAR, LLC | LOCKTON COMPANIES LLC |
| 919 NORTH MAIN ST. | 4725 PIEDMONT ROW DRIVE |
| | SUITE 510 |
| MOORESVILLE, NC 28115 | CHARLOTTE, NC 28210 |
| Telephone Number: (704) 288-3763 | Telephone Number: (704) 556-4100 |

| Policyholder Designation (Check One): | Type of Agreement (Check One): | |
|---|---|---|
| [ ] Proprietorship | [ X ] New | Indicate contract number of current policy being financed. |
| [ ] Partnership  [ X ] Corporation | [ ] Additional Premium | |

**SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT**

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix  Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSUR-ANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo. Day Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|
| 03752 | 22CSF WQ0262 | HARTFORD CASUALTY INSURANCE CO | AUTO | 12 | 11/15/2021 | 888,768.00 |
| | A.R.=Y  AddCxlDays=0 | | | | Taxes | 6,600.00 |
| | Audit=Y  Min Ernd=0.000 | | | | Fees | 50,000.00 |
| 03752 | 22CSF WQ0262 | HARTFORD CASUALTY INSURANCE CO | WC | 12 | 11/15/2021 | 2,009,967.00 |
| | A.R.=Y  AddCxlDays=0 | | | | Taxes | 37,221.00 |
| | Audit=Y  Min Ernd=0.000 | | | | Fees | 50,000.00 |
| Total taxes: | 155199.41 | | | | | |
| Total fees: | 110000.00 | Addtl Policies on Attached Addendum | | | | |

| NY: Charge under §2119 of New York Insurance Law for obtaining and servicing these policies. If none, state 'None', $_____ | FLORIDA DOCUMENTARY STAMP TAX | |
|---|---|---|

**TPF**

| DISCLOSURE STATEMENT – PAYMENT SCHEDULE | CASH PRICE (Total Premiums) | $ 5,571,556.4 |
|---|---|---|

Payment Plan:  [ X ] Monthly  [ ] Quarterly  [ ] Annually
Number of Payments  11    First Payment Due  12/15/2021
Subsequent payments are due on the same day of each succeeding period.

| CASH PRICE | - | CASH DOWN PAYMENT | = | AMOUNT FINANCED The amount of credit provided on your behalf. | + | FINANCE CHARGE The dollar amount the credit will cost you. | = | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | AMOUNT OF EACH PAYMENT | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. |
|---|---|---|---|---|---|---|---|---|---|---|
| $ 5,571,556.41 | | $ 468,026.73 | | $ 5,103,529.68 | | $ 44,764.35 | | $ 5,148,294.03 | $ 468,026.73 | 1.75% |

*TALBOT PREMIUM FINANCING, LLC*   (HEREINAFTER CALLED LENDER) *3657 BRIARPARK DR, STE 700, HOUSTON, TX 77042*

Prepayment: The Insured may prepay in full at any time and receive a refund of the unearned finance charge, calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, MA, NJ, OR, PA, VT; short rate method in SC), and subject to a nonrefundable charge stated on page two. Minimum refund is $1.00.

Security Interest: The Insured assigns to Lender as security for payment of this agreement all sums payable to the Insured with reference to the policies listed above, including, among other things, any gross return premiums and any payment on account of loss which results in reduction of unearned premium in accordance with the term of said policies.

Delinquency charge: The Insured agrees that upon default in payment of any installment five days or more (more than 5 days in IL, MS, OH) to pay a Delinquency Charge of 5% of

the delinquent installment. In AK, CA, DE, MI, MN, ND, NM, NJ, OR, TN, TX, the Delinquency Charge is not due until installment is in default for ten days or more, more than 10 days in MA, 7 days in VA. Maximum delinquency charge is $5 in DE, MT, ND; $100 in MD; $500 in NM; 1 1/2% of the installment in NJ with a minimum of $25. In AK, OR for delinquent payments of less than $250, the delinquency charge is the lesser of 5% of the payment or $5, otherwise the delinquency charge is 2% of the payment. KS: Delinquency charge is $5 plus 2% of the installment in default.

Cancellation Charge: The Insured agrees that if a default results in cancellation of the policy(ies) to pay a Cancellation Charge in the amount stated on page two. (Not applicable in KY,TX, NC.)

See the provisions on page two for additional information about nonpayment, default, and any repayment in full before the scheduled date and any prepayment refunds or penalties.

QIV# 2121361A-5 PRN:11/29/2021 3:15 PM BY:lmckithon CFG:CustomConfig RT:LocktonSE PF:12,767.66 T:1.31 B1:1.25 B2:1.25

| NOTICE TO INSURED: | 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, INCLUDING THE WRITING ON PAGE TWO, OR IF IT CONTAINS ANY BLANKS. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE PAGE TWO FOR IMPORTANT INFORMATION. |
|---|---|

All Insureds must sign as named in policies. If corporation, authorized officers must sign; if partnership, partner should sign as such; signatory acting in representative capacity represents that all Insureds have authorized this transaction and have authorized signatory to receive all notices hereunder. By signing below each insured jointly and severally agrees to make all payments required by this Agreement and to be bound by all provisions of this Agreement, including those on page two. You are not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy.

By _____
(Signature of Insured)
Juan Ramirez CTO
(Typed Name and Title)

Date  12/6/21

**AGENT'S REPRESENTATIONS AND WARRANTIES**

The undersigned Agent has read the Insurance Agent's Representations and Warranties on page two and makes all such representations and warranties recited therein and agrees to be bound by the terms of this Agreement.

By _____
Karen Burke
(Signature of Agent)
Karen Burke - Senior Account Analyst
(Typed Name and Title)

Date  12/06/2021

CW-1    QIV (Ed. 7-99)

**The Insured (jointly and severally if more than one) agrees as follows:**

1. In consideration of the payment by LENDER of the Amount Financed, Insured agrees to pay the Cash Down Payment to the insurance company(ies) listed in the Schedule of Policies, and to pay LENDER the Total of Payments in accordance with the terms of this Agreement. Interest is computed on an annual basis of 12 months of 30 days each.

2. Insured assigns to LENDER as security for the total amount payable hereunder all sums payable to the Insured under the listed Policies, including, among other things, any gross unearned premiums and any payment on account of loss which results in a reduction of unearned premium in accordance with the terms of said policies.

3. Insured hereby irrevocably appoints LENDER as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to LENDER authority to effect cancellation of policy(ies) listed in the Schedule of Policies ("Policies"), and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued therefor in Insured's name and to direct the insurance companies to make said check or draft payable to LENDER. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

4. Insured agrees that any payments made and accepted after Policy cancellation shall not constitute reinstatement or obligate LENDER to request reinstatement of such insurance Policy(ies), and Insured acknowledges that LENDER has no authority to reinstate coverage, and that such payments may be applied to Insured's indebtedness hereunder.

5. Insured agrees not to assign the Policy(ies) except for the interest of mortgagees or loss payees, without the written consent of LENDER. LENDER may assign this Agreement without Insured's consent, and all rights conferred upon LENDER shall inure to LENDER's successors and assigns.

6. Except in KY and VT, Insured agrees to pay a fee of $15.00 in the event of a dishonored check. ($5.00 in CA; $10 in AZ, MA, MD, OH, VI; $7.50 in NV, not to exceed LENDER's cost in NJ).

7. An Event of Default occurs when the Insured does not pay any installment according to the terms of this Agreement or (except in MD) fails to comply with any of the terms of the Agreement or (except in MD) if any of the Policies are cancelled for any reason. If an Event of Default occurs and after giving notice as required by law, all amounts due under this Agreement become immediately due and payable and the Insured is liable for all amounts described herein, including any unpaid balance remaining after application of the unearned premiums. If an Event of Default occurs, LENDER may at its option pursue the following remedies:

- After proper notice has been given as required by law, LENDER may immediately cancel the Policy(ies) and collect any unearned premiums or other amounts payable under said Policies. Unearned premiums shall be payable to LENDER only.
- LENDER may take all necessary actions to enforce payment of this debt. To the extent not prohibited or limited by applicable law, LENDER is entitled to collection costs and expenses incurred while enforcing its rights under this Agreement and to reasonable attorney's fees if this Agreement is referred to an attorney who is not a salaried employee of LENDER for collection or enforcement (not permitted in KY; total of collection costs and attorney's fees is limited to 20% of the unpaid balance in AZ, FL, MO, MS, NH, NV ,NY, VI; 15% of unpaid balance in TN; 25% of unpaid balance in VT).
- Except in AK, KY, MI, NC, VT and the other states listed herein, after cancellation, Insured agrees to pay interest on the unpaid balance (calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, NJ, OR, PA; short rate method in SC) as of the scheduled due date of the first delinquent payment leading to cancellation of the Policies) at the rate of 1% per month (in AR, NM, TX, at the Annual Percentage Rate stated on page one), or at the highest rate permitted by law, whichever is less, until the entire balance of this loan is paid in full. In MA, Insured agrees to pay interest at the rate of 1% per month on the difference between the unpaid balance on the date of cancellation (computed according to the actuarial method) and the unearned premiums received by LENDER on the cancelled Policies, for the period from the date of cancellation until the balance is paid in full.
- In AL, DC, DE, IL, KS, NY and WA, after cancellation, Insured agrees that LENDER may recompute the total finance charge due under this Agreement on the original amount financed, at the rate and in the manner described in this paragraph from the first effective date of the Policies through the last originally scheduled installment date, and Insured agrees to pay this amount, subject to the provisions on prepayment in full. That rate, stated as a dollar amount per year for each $100 of amount financed is as follows: $9 in AL, DE; $10 in DC, IL, WA; $12 in KS; $14 in NY.
- LENDER may offset and deduct from any amounts LENDER owes to Insured with respect to any Policies financed hereunder, any amounts which Insured owes to LENDER under this or (except in KY, MD, NC and TX) any other agreement.

8. Insured agrees to pay a non-refundable service fee of $10 in AK, AZ, CT, DE, KS, LA, MO, NY, PA, WA, WI; $12 in NJ; $12.50 in MT; $15 in AL, KY, NC, RI, SC, TN, VA; $16 in MA; $18 in MI; $20 in DC, FL, GA, MD, MN, OH; $25 in CO, HI, IA, ID, IN, ME, NE, ND, NV, OK, SD, UT, VI, WV, VY; the lesser of $50 or 10% of the amount financed in OR. In CA, the minimum finance charge is $25. In IL, the non-refundable service charge is $20 if the amount financed is less than $500, $30 if the amount financed is $500 or more but less than $1,000, and $40 if the amount financed is over $1,000. In NJ, if this loan is prepaid in full, Insured agrees to pay an additional charge of $20 for any loan of $2,000 or less, 1% of the loan for loans over $2,000 up to and including $5,000 and $100 on loans over $5,000.

9. Insured agrees to pay a cancellation charge of $5 in TN, VI; $10 in MN, ND,OH; $15 in AL, AZ, GA, MO, MS, RI, WI; $25 in CO, HI, IA, ID, IN, LA, ME, NE, OK, SD, UT, WV, WY; the greater of 2% of the unpaid balance or $5 in MA; the difference between the delinquency charge assessed and; $5 in DE, MI, MT, NJ, NY, OR, WA; $10 in DC; $15 in NH; $100 in MD.

10. Insured agrees to pay promptly to the insurer any additional premiums due on the Policies.

11. The Agent is not the agent of LENDER and the Agent cannot bind LENDER. LENDER is not the Agent of any insurer and is not liable for any acts or omissions of any insurer. Insured acknowledges that it has chosen to do business with the Agent and the insurance companies issuing the Policies, and that the insolvency, fraud, defalcation or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to LENDER hereunder.

12. Except in MD, and if not prohibited by applicable law, LENDER may insert the name of the insurer, policy numbers and first installment due date if omitted and if policy has not been issued at the time of signature.

13. This Agreement shall have no force or effect until accepted by LENDER. All rights and remedies in this Agreement are cumulative and not exclusive. If any part of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect. Neither LENDER nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by LENDER or its assignee of the rights conferred herein. This Agreement constitutes the entire Agreement between LENDER and Insured and may not be modified except as agreed upon in writing. LENDER's acceptance of late or partial payments shall not be deemed a waiver by LENDER of any provisions of this Agreement, and LENDER is entitled to require Insured to strictly comply with the terms hereof. Except in AR, this Agreement is governed by the law of the state of the Insured's address shown on page one of this Agreement. In AR, this Agreement is governed by the law of the state where this Agreement is accepted by LENDER. If any amount contracted for or received by LENDER is determined to violate any law or regulation, LENDER may return such prohibited amount to Insured without any further liability therefor (waiver of liability not appliable in KY).

14. Insured represents and warrants that the proceeds of this loan are to be used for a purpose insurance for other than personal, family or household purposes and that all information provided herein or in connection with this agreement is true, correct, complete and not misleading.

15. **CALIFORNIA RESIDENTS ONLY: FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.** Insured agrees that, in accordance with Section 18608 of the California Financial Code, LENDER relies upon the exercise of LENDER's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of LENDER's willful failure to mail the notice of cancellation required under California law.

**In connection with the Policies scheduled on page one, the Agent represents and warrants to LENDER, its successors and assigns that:**

1. Deposit premiums are not less than the anticipated premiums to be earned for the full terms of the Policies.

2. All of the scheduled Policies or bonds in this Agreement are cancellable by standard short rate or pro-rata tables.

3. When cancellation is requested by Insured or by LENDER, none of the Policies require advance notice of cancellation to any party, other than any notice required to be given by LENDER, and there are no audit or reporting form policies, Policies subject to retrospective rating or to minimum earned premiums except as indicated in the Schedule of Policies.

4. We are the authorized policy issuing Agent of the insurance companies or the broker placing the coverage directly with the insurance company on all Policies except as indicated in the Schedule of Policies.

5. The Insured(s) signature(s) on both pages one and two hereof are genuine, the Insured has not paid for the scheduled Policies other than as described herein, the Insured(s) have received a copy of this Agreement, this Agreement is valid and enforceable and there are no defenses to it, the scheduled Policies are in full force and effect and the premiums indicated are correct for the term of the Policies, and all other information relating to the Policies and the Insured is complete and correct. None of the Policies have been financed on an installment payment plan provided by the insurance company(ies), or are noncancellable policy(ies), or policies written for a term of less than one year. The Agent recognizes the Insured's assignment of the unearned premiums and upon cancellation of any of the scheduled Policies agrees to pay promptly any unearned commissions to LENDER and to pay to LENDER the unearned premiums immediately upon receipt Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to LENDER hereunder. The Policies are not for personal, family or household purposes.

6. A preceding in bankruptcy, receivership or insolvency has not been instituted by or against the Insured or if the Insured is the subject of such a proceeding, it is noted on the Agreement in the space in which the Insured's name and address is placed.

7. If the Agreement has been signed by the Agent on behalf of the Insured, the Agent has the authority to act in this capacity and the Agent has provided the Insured with a complete copy of this Agreement.

8. There are no exceptions to the Policies financed other than those indicated, and the Policy(ies) comply with LENDER's eligibility requirements.

9. The Cash Down Payment, and any installments due from the Insured which have not been collected, have been collected from the Insured.

10. Agent is not an agent of LENDER and is not authorized to bind LENDER and has not made any representation to the contrary.

The Agent agrees to promptly remit all funds received from LENDER and the Insured for the financed Policies and due to the insurance company(ies) issuing such Policies. Agent shall be liable to LENDER for any losses, costs, damages or other expenses (including attorney's fees) incurred by LENDER or its assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, or otherwise arising out of the breach by Agent of this Agreement. Agent shall promptly notify LENDER of any unpaid increased premiums for the Policies.

CW- 1   QIV (Ed. 7-99)

**ADDENDUM TO COMMERCIAL INSURANCE PREMIUM FINANCE AGREEMENT ("PFA")**

| Agent Number | TPF04 |
|---|---|
| Quote Number | 2121361A-5 |

| SCHEDULE OF POLICIES COVERED BY THE PFA INCLUDES THE FOLLOWING: | | | | | | |
|---|---|---|---|---|---|---|
| FOR COMPANY USE ONLY | POLICY NUMBER<br>Prefix       Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSUR-ANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo. Day Year | POLICY PREMIUM |
| 18177<br>B4706 | P00100024416303<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | AXIS SURPLUS INSURANCE COMPANY<br>R-T SPECIALTY LLC<br>9020 STONY POINT PARKWAY RICHMOND, VA | XLIA | 12 | 11/15/2021<br>Taxes<br>Fees | 398,000.00<br>21,492.00<br>1,000.00 |
| 13195<br>B4706 | GVE100236503<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | GEMINI INSURANCE COMPANY<br>R-T SPECIALTY LLC<br>9020 STONY POINT PARKWAY RICHMOND, VA | XLIA | 12 | 11/15/2021<br>Taxes<br>Fees | 166,000.00<br>8,964.00<br>1,000.00 |
| 83089<br>B4706 | XLS0121351<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | SCOTTSDALE INSURANCE COMPANY<br>R-T SPECIALTY LLC<br>9020 STONY POINT PARKWAY RICHMOND, VA | XLIA | 12 | 11/15/2021<br>Taxes<br>Fees | 199,980.00<br>10,798.92<br>1,000.00 |
| 15796<br>B4706 | ELD30002140701<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | ENDURANCE AMERICAN SPECIALTY<br>R-T SPECIALTY LLC<br>9020 STONY POINT PARKWAY RICHMOND, VA | XLIA | 12 | 11/15/2021<br>Taxes<br>Fees | 189,672.00<br>10,242.29<br>2,000.00 |
| 16930 | IEPICCD93L001<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | IRONSHORE SPECIALTY INS. CO | GL | 12 | 11/15/2021<br>Taxes<br>Fees | 545,598.00<br>29,462.29<br>2,000.00 |
| 16930 | IEELCASCD93O001<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | IRONSHORE SPECIALTY INS. CO | GL | 12 | 11/15/2021<br>Taxes<br>Fees | 313,789.00<br>16,944.61<br>2,000.00 |
| 06604 | AEC863276600<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | ZURICH AMERICAN INSURANCE CO | XLIA | 12 | 11/15/2021<br>Taxes<br>Fees | 245,100.00<br>13,235.40<br>1,000.00 |
| 22967 | 6078558504<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=25.000 | CONTINENTAL CASUALTY COMPANY | PROP | 12 | 11/15/2021<br>Taxes<br>Fees | 124,483.00<br>238.90<br>0.00 |
| NE004 | fee<br>A.R.=N    AddCxlDays=0<br>Audit=N    Min Ernd=100.000 | SERVICE FEE WITHOUT GUARANTY | FEE | 12 | 11/15/2021<br>Taxes<br>Fees | 225,000.00<br>0.00<br>0.00 |

TALBOT PREMIUM FINANCING, LLC
3657 BRIARPARK DR, STE 700, HOUSTON, TX 77042

Pg. 1 of 2

## COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT

2/24/2022 157,045.63

| | | Contract Number | |
|---|---|---|---|
| | Agent Number | TPF04 | Quote Number 2163016A-1 |

| Name and Address of Insured (Exactly as Shown on Policy) ("Insured") | Name and Address of Insured's Agent ("Agent") |
|---|---|
| POWER HOME SOLAR, LLC | LOCKTON COMPANIES LLC |
| 919 NORTH MAIN ST | 4725 PIEDMONT ROW DRIVE |
| | SUITE 510 |
| MOORESVILLE, NC 28115 | CHARLOTTE, NC 28210 |
| Telephone Number: (704) 288-3763 | Telephone Number: (704) 556-4100 |

| Policyholder Designation (Check One): | | Type of Agreement (Check One): | | |
|---|---|---|---|---|
| [ ] Proprietorship | [ ] New | Indicate contract number of current policy being financed. | | 67-84 |
| [ ] Partnership [ X ] Corporation | [ X ] Additional Premium | | | |

### SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix | Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSUR-ANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo. Day Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|---|
| 13510 B4693 | 8258-0187 | | FEDERAL INSURANCE COMPANY LOCKTON COMPANIES LLC 4725 PIEDMONT ROW DRIVE CHARLOTTE, NC | ERPK | 12 | 2/18/2022 | 63,637.80 |
| | | | | | | Taxes | 0.00 |
| | | | | | | Fees | 0.00 |
| 17997 B4693 | 121 CTR 0167463-02 | | PELEUS INSURANCE COMPANY LOCKTON COMPANIES LLC 4725 PIEDMONT ROW DRIVE CHARLOTTE, NC | EO | 12 | 2/18/2022 | 53,440.64 |
| | | | | | | Taxes | 3,279.31 |
| | | | | | | Fees | 0.00 |
| Total taxes : 8050.53 | | | | | | | |
| Total fees : 195.00 | | | Addtl Policies on Attached Addendum | | | | |

NY: Charge under §2119 of New York Insurance Law for obtaining and servicing these policies. If none, state 'None'. $_____

FLORIDA DOCUMENTARY STAMP TAX

**TPF**

### DISCLOSURE STATEMENT – PAYMENT SCHEDULE

| CASH PRICE (Total Premiums) | $ 200,260.82 |
|---|---|

Payment Plan: [ X ] Monthly [ ] Quarterly [ ] Annually

Number of Payments  8

First Payment Due  3/15/2022

Subsequent payments are due on the same day of each succeeding period.

| CASH PRICE | - | CASH DOWN PAYMENT | = | AMOUNT FINANCED The amount of credit provided on your behalf. | + | FINANCE CHARGE The dollar amount the credit will cost you | = | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments | AMOUNT OF EACH PAYMENT | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate |
|---|---|---|---|---|---|---|---|---|---|---|
| $ 200,260.82 | | $ 43,215.19 | | $ 157,045.63 | | $ 993.97 | | $ 158,039.60 | $ 19,754.95 | 1.75% |

**TALBOT PREMIUM FINANCING, LLC**    (HEREINAFTER CALLED LENDER) *3657 BRIARPARK DR, STE 700, HOUSTON, TX 77042*

Prepayment. The Insured may prepay in full at any time and receive a refund of the unearned finance charge, calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, MA, NJ, OR, PA, VT; short rate method in SC), and subject to a nonrefundable charge stated on page two. Minimum refund is $1.00.

Security Interest. The Insured assigns to Lender as security for payment of this agreement all sums payable to the Insured with reference to the policies listed above, including, among other things, any gross return premiums and any payment on account of loss which results in reduction of unearned premium in accordance with the term of said policies.

Delinquency charge. The Insured agrees that upon default in payment of any installment five days or more (more than 5 days in IL, MS, OH) to pay a Delinquency Charge of 5% of

the delinquent installment. In AK, CA, DE, MI, MN, ND, NM, NJ, OR, TN, TX, the Delinquency Charge is not due until installment is in default for ten days or more, more than 10 days in MA, 7 days in VA. Maximum delinquency charge is $5 in DE, MT, ND; $100 in MT, ND; $500 in NM, 1/2% of the installment in NJ with a minimum of $25. In AK, OR, for delinquent payments of less than $250, the delinquency charge is the lesser of 5% of the payment or $5, otherwise the delinquency charge is 2% of the payment. KS. Delinquency charge is $5 plus 2% of the installment in default.

Cancellation Charge: The Insured agrees that if a default results in cancellation of the policy(ies) to pay a Cancellation Charge in the amount stated on page two. (Not applicable in KY, TX, NC ).

See the provisions on page two for additional information about nonpayment, default, and any repayment in full before the scheduled date and any prepayment refunds or penalties.

QIV# 2163016A-1 PRN:2/24/2022 10:10 AM BY:lmckithon CFG:CustomConfig RT:LocktonSE PF:312.05 T:1.24 B1:1.20 B2:1.20

| NOTICE TO INSURED: | 1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, INCLUDING THE WRITING ON PAGE TWO, OR IF IT CONTAINS ANY BLANKS. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE PAGE TWO FOR IMPORTANT INFORMATION. |
|---|---|

All Insureds must sign as named in policies. If corporation, authorized officers must sign; if partnership, partner should sign as such; signatory acting in representative capacity represents that all insureds have authorized this transaction and have authorized signatory to receive all notices hereunder. By signing below each insured jointly and severally agrees to make all payments required by this Agreement and to be bound by all provisions of this Agreement, including those on page two. You are not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy.

By _____    Date 03/07/2022

(Signature of Insured)
**President & COO**
(Typed Name and Title)

### AGENT'S REPRESENTATIONS AND WARRANTIES

The undersigned Agent has read the Insurance Agent's Representations and Warranties on page two and makes all such representations and warranties recited therein and agrees to be bound by the terms of this Agreement.

By _____    Date 3/7/2022

(Signature of Agent)
Senior Vice President
(Typed Name and Title)

CW-1   QIV (Ed. 7-99)

**The Insured (jointly and severally if more than one) agrees as follows:** (Pg. 2 of 2)

1. In consideration of the payment by LENDER of the Amount Financed, Insured agrees to pay the Cash Down Payment to the insurance company(ies) listed in the Schedule of Policies, and to pay LENDER the Total of Payments in accordance with the terms of this Agreement. Interest is computed on an annual basis of 12 months of 30 days each.

2. Insured assigns to LENDER as security for the total amount payable hereunder all sums payable to the Insured under the listed Policies, including, among other things, any gross unearned premiums and any payment on account of loss which results in a reduction of unearned premium in accordance with the terms of said policies.

3. Insured hereby irrevocably appoints LENDER as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to LENDER authority to effect cancellation of policy(ies) listed in the Schedule of Policies ("Policies"), and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued therefor in Insured's name and to direct the insurance companies to make said check or draft payable to LENDER. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

4. Insured agrees that any payments made and accepted after Policy cancellation shall not constitute reinstatement or obligate LENDER to request reinstatement of such insurance Policy(ies), and Insured acknowledges that LENDER has no authority to reinstate coverage, and that such payments may be applied to Insured's indebtedness hereunder.

5. Insured agrees not to assign the Policy(ies) except for the interest of mortgagees or loss payees, without the written consent of LENDER. LENDER may assign this Agreement without Insured's consent, and all rights conferred upon LENDER shall inure to LENDER's successors and assigns.

6. Except in KY and VT, Insured agrees to pay a fee of $15.00 in the event of a dishonored check. ($5.00 in CA; $10 in AZ, MA, MD, OH, VI; $7.50 in NV, not to exceed LENDER's cost in NJ).

7. An Event of Default occurs when the Insured does not pay any installment according to the terms of this Agreement or (except in MD) fails to comply with any of the terms of the Agreement or (except in MD) if any of the Policies are cancelled for any reason. If an Event of Default occurs and after giving notice as required by law, all amounts due under this Agreement become immediately due and payable and the Insured is liable for all amounts described herein, including any unpaid balance remaining after application of the unearned premiums. If an Event of Default occurs, LENDER may at its option pursue the following remedies:

• After proper notice has been given as required by law, LENDER may immediately cancel the Policy(ies) and collect any unearned premiums or other amounts payable under said Policies. Unearned premiums shall be payable to LENDER only.

• LENDER may take all necessary actions to enforce payment of this debt. To the extent not prohibited or limited by applicable law, LENDER is entitled to collection costs and expenses incurred while enforcing its rights under this Agreement and to reasonable attorney's fees if this Agreement is referred to an attorney who is not a salaried employee of LENDER for collection or enforcement (not permitted in KY; total of collection costs and attorney's fees is limited to 20% of the unpaid balance in AZ, FL, MO, MS, NH, NV, NY, VI; 15% of unpaid balance in TN; 25% of unpaid balance in VT).

• Except in AK, KY, MI, NC, VT and the other states listed herein, after cancellation, Insured agrees to pay interest on the unpaid balance (calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, NJ, OR, PA; short rate method in SC) as of the scheduled due date of the first delinquent payment leading to cancellation of the Policies) at the rate of 1% per month (in AR, NM, TX, at the Annual Percentage Rate stated on page one), or at the highest rate permitted by law, whichever is less, until the entire balance of this loan is paid in full. In MA, Insured agrees to pay interest at the rate of 1% per month on the difference between the unpaid balance on the date of cancellation (computed according to the actuarial method) and the unearned premiums received by LENDER on the cancelled Policies, for the period from the date of cancellation until the balance is paid in full.

• In AL, DC, DE, IL, KS, NY and WA, after cancellation, Insured agrees that LENDER may recompute the total finance charge due under this Agreement on the original amount financed, at the rate and in the manner described in this paragraph from the first effective date of the Policies through the last originally scheduled installment date, and Insured agrees to pay this amount, subject to the provisions on prepayment in full. That rate, stated as a dollar amount per year for each $100 of amount financed is as follows: $9 in AL, DE, $10 in DC; IL, WA; $12 in KS, $14 in NY.

• LENDER may offset and deduct from any amounts LENDER owes to Insured with respect to any Policies financed hereunder, any amounts which Insured owes to LENDER under this or (except in KY, MD, NC and TX) any other agreement.

8. Insured agrees to pay a non-refundable service fee of $10 in AK, AZ, CT, DE, KS, LA, MO, NY, PA, WA, WI; $12 in NJ, $12.50 in MT, $15 in AL, KY, NC, RI, SC, TN, VA, $16 in MA; $18 in MI; $20 in DC, FL, GA, MD, NM, OH; $25 in CO, HI, IA, ID, IN, ME, NE, ND, NV, OK, SD, UT, VI, WV, WY, the lesser of $50 or 10% of the amount financed in OR. In CA, the minimum finance charge is $25. In IL, the non-refundable service charge is $20 if the amount financed is less than $500, $30 if the amount financed is $500 or more but less than $1,000, or $40 if the amount financed is over $1,000. In NJ, if this loan is prepaid in full, Insured agrees to pay an additional charge of $20 for any loan of $2,000 or less, 1% of the loan for loans over $2,000 up to and including $5,000 and $100 on loans over $5,000.

9. Insured agrees to pay a cancellation charge of $5 in TN, VT; $10 in MN, ND,OH; $15 in AL, AZ, GA, MO, MS, RI, WI, $25 in CO, HI, IA, ID, IN, LA, ME, NE, OK, SD, UT, WV, WY, the greater of 2% of the unpaid balance or $5 in MA, the difference between the delinquency charge assessed and; $5 in DE, MI, MT, NJ, NY, OR, WA; $10 in DC; $15 in KY; $100 in MD.

10. Insured agrees to pay promptly to the insurer any additional premiums due on the Policies.

11. The Agent is not the agent of LENDER and the Agent cannot bind LENDER. LENDER is not the Agent of any insurer and is not liable for any acts or omissions of any insurer. Insured acknowledges that it has chosen to do business with the Agent and the insurance companies issuing the Policies, and that the insolvency, fraud, defalcation or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to LENDER hereunder.

12. Except in MD, and if not prohibited by applicable law, LENDER may insert the name of the insurer, policy numbers and first installment due date if omitted and if policy has not been issued at the time of signature.

13. This Agreement shall have no force or effect until accepted by LENDER. All rights and remedies in this Agreement are cumulative and not exclusive. If any part of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect. Neither LENDER nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by LENDER or its assignee of the rights conferred herein. This Agreement constitutes the entire Agreement between Insured and LENDER and may not be modified except as agreed upon in writing. LENDER's acceptance of late or partial payments shall not be deemed a waiver by LENDER of any provisions of this Agreement, and LENDER is entitled to require Insured to strictly comply with the terms hereof. Except in AR, this Agreement is governed by the law of the state of the Insured's address shown on page one of this Agreement. In AR, this Agreement is governed by the law of the state where this Agreement is accepted by LENDER. If any amount contracted for or received by LENDER is determined to violate any law or regulation, LENDER may return such prohibited amount to Insured without any further liability therefor (waiver of liability not applicable in KY).

14. Insured represents and warrants that the proceeds of this loan are to be used to purchase insurance for other than personal, family or household purposes and that all information provided herein or in connection with this agreement is true, correct, complete and not misleading.

15. **CALIFORNIA RESIDENTS ONLY: FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.**

Insured agrees that, in accordance with Section 18608 of the California Financial Code, LENDER's liability to Insured upon the exercise of LENDER's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of LENDER's willful failure to mail the notice of cancellation required under California law.

**In connection with the Policies scheduled on page one, the Agent represents and warrants to LENDER, its successors and assigns that:**

1. Deposit premiums are not less than the anticipated premiums to be earned for the full terms of the Policies.

2. All of the scheduled Policies or bonds in this Agreement are cancellable by standard short rate or pro-rata tables.

3. When cancellation is requested by Insured or by LENDER, none of the Policies require advance notice of cancellation to any party, other than any notice required to be given by LENDER, and there are no audit or reporting form policies, Policies subject to retrospective rating or to minimum earned premiums except as indicated in the Schedule of Policies.

4. We are the authorized policy issuing Agent of the insurance companies or the broker placing the coverage directly with the insurance company on all Policies except as indicated in the Schedule of Policies.

5. The Insured(s) signature(s) on both pages one and two hereof are genuine, the Insured has not paid for the scheduled Policies other than as described herein, the Insured(s) have received a copy of this Agreement, this Agreement is valid and enforceable and there are no defenses to it, the scheduled Policies are in full force and effect and the premiums indicated are correct for the term of the Policies, and all other information relating to the Policies and the Insured is complete and correct. None of the Policies have been financed on an installment payment plan provided by the insurance company(ies), or are noncancellable policy(ies), or policies written for a term of less than one year. The Agent recognizes the Insured's assignment of the unearned premiums and upon cancellation of any of the scheduled Policies agrees to pay promptly any unearned commissions to LENDER and to pay to LENDER the unearned premiums immediately upon receipt Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to LENDER hereunder. The Policies are not for personal, family or household purposes.

6. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the Insured or if the Insured is the subject of such a proceeding, it is noted on the Agreement in the space in which the Insured's name and address is placed.

7. If the Agreement has been signed by the Agent on behalf of the Insured, the Agent has the authority to act in this capacity and the Agent has provided the Insured with a complete copy of this Agreement.

8. There are no exceptions to the Policies financed other than those indicated, and the Policy(ies) comply with LENDER's eligibility requirements.

9. The Cash Down Payment, and any installments due from the Insured which Agent has agreed to collect, have been collected from the Insured.

10. Agent is not an agent of LENDER and is not authorized to bind LENDER and has not made any representation to the contrary.

The Agent agrees to promptly remit all funds received from LENDER and the Insured for the financed Policies and due to the insurance company(ies) issuing such Policies. Agent shall be liable to LENDER for any losses, costs, damages or other expenses (including attorney's fees) incurred by LENDER or its assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, or otherwise arising out of the breach by Agent of this Agreement. Agent shall promptly notify LENDER of any unpaid increased premiums for the Policies.

CW- 1   CIV (Ed 7-99)

**ADDENDUM TO COMMERCIAL INSURANCE PREMIUM FINANCE AGREEMENT ("PFA")**

| Agent Number | TPF04 |
|---|---|
| Quote Number | 2163016A-1 |

SCHEDULE OF POLICIES COVERED BY THE PFA INCLUDES THE FOLLOWING:

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix     Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSUR-ANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo. Day Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|
| 20166 B4693 | 2-CIA-NC-17-S01056 | ACCREDITED SPECIALTY INSURANCE LOCKTON COMPANIES LLC 4725 PIEDMONT ROW DRIVE CHARLOTTE, NC | CBY | 12 | 11/15/2021 Taxes Fees | 74,936.85 4,771.22 195.00 |

**TALBOT PREMIUM FINANCING, LLC**
3657 BRIARPARK DR, STE 700, HOUSTON, TX 77042
**COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT**

4/18/2022 4,953.04

Pg. 1 of 2

| | |
|---|---|
| **Contract Number** | |
| **Agent Number** TPF04 | **Quote Number** 2188185A-1 |

Name and Address of Insured (Exactly as Shown on Policy) ("Insured")
POWER HOME SOLAR LLC
DBA PINK ENERGY
919 NORTH MAIN ST.

MOORESVILLE, NC 28115

Telephone Number: (704) 288-3763

Name and Address of Insured's Agent ("Agent")
LOCKTON COMPANIES LLC

4725 PIEDMONT ROW DRIVE
SUITE 510
CHARLOTTE, NC 28210

Telephone Number: (704) 556-4100

Policyholder Designation (Check One):   [ ] Proprietorship
[ ] Partnership   [ X ] Corporation

Type of Agreement (Check One):   [ ] New   [ X ] Additional Premium

Indicate contract number of current policy being financed.   ██████67-84

## SCHEDULE OF POLICIES COVERED BY THIS AGREEMENT

| FOR COMPANY USE ONLY | POLICY NUMBER Prefix | Number | FULL NAME OF INSURANCE COMPANY AND ADDRESS OF BRANCH REPORTING OFFICE AND FULL NAME AND ADDRESS OF GENERAL AGENT | TYPE OF INSUR-ANCE | TERM IN MONTHS | POLICY EFFECTIVE DATE Mo. Day Year | POLICY PREMIUM |
|---|---|---|---|---|---|---|---|
| 15617 | MML-23823-22 | | ATLANTIC SPECIALTY INSURANCE | PL | 12 | 4/14/2022 | 6,316.00 |
| | | | | | | Taxes | 0.00 |
| | | | | | | Fees | 0.00 |
| Total taxes : | 0.00 | | | | | | |
| Total fees : | 0.00 | | | | | | |

NY: Charge under §2119 of New York Insurance Law for obtaining and servicing these policies. If none, state 'None', $_____

FLORIDA DOCUMENTARY STAMP TAX

| | |
|---|---|
| **CASH PRICE** (Total Premiums) | $ 6,316.00 |

### DISCLOSURE STATEMENT – PAYMENT SCHEDULE

**TPF**

Payment Plan:   [ X ] Monthly   [ ] Quarterly   [ ] Annually
Number of Payments   5
Subsequent payments are due on the same day of each succeeding period.

First Payment Due   5/15/2022

| CASH PRICE | - | CASH DOWN PAYMENT | = | AMOUNT FINANCED The amount of credit provided on your behalf. | + | FINANCE CHARGE The dollar amount the credit will cost you. | = | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | AMOUNT OF EACH PAYMENT | ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. |
|---|---|---|---|---|---|---|---|---|---|---|
| $ 6,316.00 | | $ 1,362.96 | | $ 4,953.04 | | $ 21.91 | | $ 4,974.95 | $ 994.99 | 1.75% |

**TALBOT PREMIUM FINANCING, LLC** (HEREINAFTER CALLED LENDER) *3657 BRIARPARK DR, STE 700, HOUSTON, TX 77042*
Prepayment: The Insured may prepay in full at any time and receive a refund of the unearned finance charge, calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, MA, NJ, OR, PA, VT; short rate method in SC), and subject to a nonrefundable charge stated on page two. Minimum refund is $1.00.
Security Interest: The Insured assigns to Lender as security for payment of this agreement all sums payable to the Insured with reference to the policies listed above, including, among other things, any gross return premiums and any payment on account of loss which results in reduction of unearned premium in accordance with the term of said policies.
Delinquency charge: The Insured agrees that upon default in payment of any installment five days or more (more than 5 days in IL, MS, OH) to pay a Delinquency Charge of 5% of the delinquent installment. In AK, CA, DE, MI, MN, ND, NM, NJ, OR, TN, TX, the Delinquency Charge is not due until installment is in default for ten days or more, more than 10 days in MA, 7 days in VA. Maximum delinquency charge is $5 in DE, MT, ND; $100 in NM; $500 in NM; 1/2% of the installment in NJ with a minimum of $25. In AK, OR: for delinquent payments of less than $250, the delinquency charge is the lesser of 5% of the payment or $5, otherwise the delinquency charge is 2% of the payment. KS: Delinquency charge is $5 plus 2% of the installment in default.
Cancellation Charge: The Insured agrees that if a default results in cancellation of the policy(ies) to pay a Cancellation Charge in the amount stated on page two. (Not applicable in KY, TX, NC.)
See the provisions on page two for additional information about nonpayment, default, and any repayment in full before the scheduled date and any prepayment refunds or penalties.

QIV# 2188185A-1 PRN:4/19/2022 9:33 AM BY:lmckithon CFG:CustomConfig RT:LocktonSE PF:3.76 T:1.49 B1:1.45 B2:1.45

**NOTICE TO INSURED:**
1. DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT, INCLUDING THE WRITING ON PAGE TWO, OR IF IT CONTAINS ANY BLANKS. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE PAGE TWO FOR IMPORTANT INFORMATION.

All Insureds must sign as named in policies. If corporation, authorized officers must sign; if partnership, partner should sign as such; signatory acting in representative capacity represents that all Insureds have authorized this transaction and have authorized signatory to receive all notices hereunder. By signing below each insured jointly and severally agrees to make all payments required by this Agreement and to be bound by all provisions of this Agreement, including those on page two. You are not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy.

By _James Carroll_   Date _____
_(Signature of Insured)_
James Carroll   Sr Director of Finance
_(Typed Name and Title)_

**AGENT'S REPRESENTATIONS AND WARRANTIES**
The undersigned Agent has read the Insurance Agent's Representations and Warranties on page two and makes all such representations and warranties recited therein and agrees to be bound by the terms of this Agreement.

By _KWalker_   Date 06/21/2022
_(Signature of Agent)_

Sr. Account Analyst
_(Typed Name and Title)_

CW-1   QIV (Ed. 7-99)

**The Insured (jointly and severally if more than one) agrees as follows:**

1. In consideration of the payment by LENDER of the Amount Financed, Insured agrees to pay the Cash Down Payment to the insurance company(ies) listed in the Schedule of Policies, and to pay LENDER the Total of Payments in accordance with the terms of this Agreement. Interest is computed on an annual basis of 12 months of 30 days each.

2. Insured assigns to LENDER as security for the total amount payable hereunder all sums payable to the Insured under the listed Policies including, among other things, any gross unearned premiums and any payment on account of loss which results in a reduction of unearned premium in accordance with the terms of said policies.

3. Insured hereby irrevocably appoints LENDER as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below) and, after proper notice has been mailed as required by law, grants to LENDER authority to effect cancellation of policy(ies) listed in the Schedule of Policies ("Policies"), and to receive any unearned premium or other amounts with respect to the Policies assigned as security herein, and to sign any check or draft issued therefor in Insured's name and to direct the insurance companies to make said check or draft payable to LENDER. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

4. Insured agrees that any payments made and accepted after Policy cancellation shall not constitute reinstatement or obligate LENDER to request reinstatement of such insurance Policy(ies), and Insured acknowledges that LENDER has no authority to reinstate coverage, and that such payments may be applied to Insured's indebtedness hereunder.

5. Insured agrees not to assign the Policy(ies) except for the interest of mortgagees or loss payees, without the written consent of LENDER. LENDER may assign this Agreement without Insured's consent, and all rights conferred upon LENDER shall inure to LENDER's successors and assigns.

6. Except in KY and VT, Insured agrees to pay a fee of $15.00 in the event of a dishonored check. ($5.00 in CA; $10 in AZ, MA, MD, OH, VI; $7.50 in NV; not to exceed LENDER's cost in NJ.)

7. An Event of Default occurs when the Insured does not pay any installment according to the terms of this Agreement or (except in MD) fails to comply with any of the terms of the Agreement or (except in MD) if any of the Policies are cancelled for any reason. If an Event of Default occurs and after giving notice as required by law, all amounts due under this Agreement become immediately due and payable and the Insured is liable for all amounts described herein, including any unpaid balance remaining after application of the unearned premiums. If an Event of Default occurs, LENDER may at its option pursue the following remedies:

- After proper notice has been given as required by law, LENDER may immediately cancel the Policy(ies) and collect any unearned premiums or other amounts payable under said Policies. Unearned premiums shall be payable to LENDER only.
- LENDER may take all necessary actions to enforce payment of this debt. To the extent not prohibited or limited by applicable law, LENDER is entitled to collection costs and expenses incurred while enforcing its rights under this Agreement and to reasonable attorney's fees if this Agreement is referred to an attorney who is not a salaried employee of LENDER for collection or enforcement (not permitted in KY; total of collection costs and attorney's fees is limited to 20% of the unpaid balance in AZ, FL, MD, MS, NH, NV, NY, VI; 15% of unpaid balance in TX; 25% of unpaid balance in VT).
- Except in AK, KY, MI, NC, VT and the other states listed herein, after cancellation, Insured agrees to pay interest on the unpaid balance (calculated according to the Rule of 78's (actuarial method in AR, AZ, CA, NJ, OR, PA; short rate method in SC) as of the scheduled due date of the first delinquent payment leading to cancellation of the Policies) at the rate of 1% per month (in AR, NM, TX, at the Annual Percentage Rate stated on page one), or at the highest rate permitted by law, whichever is less, until the entire balance of this loan is paid in full. In MA, Insured agrees to pay interest at the rate of 1% per month on the difference between the unpaid balance on the date of cancellation (computed according to the actuarial method) and the unearned premiums received by LENDER on the cancelled Policies, for this period from the date of cancellation until the balance is paid in full.
- In AL, DC, DE, IL, KS, NY and WA, after cancellation, Insured agrees that LENDER may recompute the total finance charge due under this Agreement on the original amount financed, at the rate and in the manner described in this paragraph from the first effective date of the Policies through the last originally scheduled installment date, and Insured agrees to pay this amount, subject to the provisions on prepayment in full. That rate, stated as a dollar amount per year for each $100 of amount financed is as follows: $9 in AL, DE; $10 in DC; IL, WA; $12 in KS; $14 in NY.
- LENDER may offset and deduct from any amounts LENDER owes to Insured with respect to any Policies financed hereunder, any amounts which Insured owes to LENDER under this or (except in KY, MD, NC and TX) any other agreement.

8. Insured agrees to pay a non-refundable service fee of $10 in AK, AZ, CT, DE, KS, LA, MO, NY, PA, WA, WI; $12 in NJ; $12.50 in MT; $15 in AL, KY, NC, RI, SC, TN, VA; $16 in MA; $18 in MI; $20 in DC, FL, GA, MD, MN, OH; $25 in CO, HI, IA, ID, IN, ME, NE, ND, NV, OK, SD, UT, VI, WV, WY; the lesser of $50 or 10% of the amount financed in OR. In CA, the minimum finance charge is $25. In IL, the non-refundable service charge is $20 if the amount financed is less than $500, $30 if the amount financed is $500 or more but less than $1,000, or $40 if the amount financed is over $1,000. In NJ, if this loan is prepaid in full, Insured agrees to pay an additional charge of $25 for any loan of $2,000 or less. 1% of the loan for loans over $2,000 up to and including $5,000 and $100 on loans over $5,000.

9. Insured agrees to pay a cancellation charge of $5 in TN, VI, $10 in MN, ND,OH; $15 in AL, AZ, GA, MO, MS, RI, WI; $25 in CO, HI, IA, ID, IN, LA, ME, OK, SD, UT, WV, WY; the greater of 2% of the unpaid balance or $5 in MA; the difference between the delinquency charge assessed and; $5 in DC, MI, MT, NJ, NY, OR, WA, $10 in DC; $15 in NH; $100 in MD.

10. Insured agrees to pay promptly to the insurer any additional premiums due on the Policies.

11. The Agent is not the agent of LENDER and the Agent cannot bind LENDER. LENDER is not the Agent of any insurer and is not liable for any acts or omissions of any insurer. Insured acknowledges that it has chosen to do business with the Agent and the insurance companies issuing the Policies, and that insolvency, fraud, defalcation or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to LENDER hereunder.

12. Except in MD, and if not prohibited by applicable law, LENDER may insert the name of the Insurer, policy numbers and first installment due date if omitted and if policy has not been issued at the time of signature.

13. This Agreement shall have no force or effect until accepted by LENDER. All rights and remedies in this Agreement are cumulative and not exclusive. If any part of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect. Neither LENDER nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by LENDER or its assignee of the rights conferred herein. This Agreement constitutes the entire Agreement between LENDER and Insured and may not be modified except as agreed upon in writing. LENDER's acceptance of late or partial payments shall not be deemed a waiver by LENDER of any provisions of this Agreement, and LENDER is entitled to require Insured to strictly comply with the terms hereof. Except in AR, this Agreement is governed by the law of the state of the Insured's address shown on page one of this Agreement. In AR, this Agreement is governed by the law of the state where the Agreement is accepted by LENDER. If any amount contracted for or received by LENDER is determined to violate any law or regulation LENDER may return such prohibited amount to Insured without any further liability therefor (waiver of liability not applicable in KY).

14. Insured represents and warrants that the proceeds of this loan are to be used to purchase insurance for other than personal, family or household purposes and that all information provided herein or in connection with this agreement is true, correct, complete and not misleading.

## 15. CALIFORNIA RESIDENTS ONLY: FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.

Insured agrees that, in accordance with Section 18608 of the California Financial Code, LENDER's liability to Insured upon the exercise of LENDER's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of LENDER's wilful failure to mail the notice of cancellation required under California law.

**In connection with the Policies scheduled on page one, the Agent represents and warrants to LENDER, its successors and assigns that:**

1. Deposit premiums are not less than the anticipated premiums to be earned for the full terms of the Policies.

2. All of the scheduled Policies or bonds in this Agreement are cancellable by standard short rate or pro-rate tables.

3. When cancellation is requested by Insured or by LENDER, none of the Policies require advance notice of cancellation to any party, other than any notice required to be given by LENDER, and there are no audit or reporting form policies. Policies subject to retrospective rating or to minimum earned premiums except as indicated in the Schedule of Policies.

4. We are the authorized policy issuing Agent of the insurance companies or the broker placing the coverage directly with the insurance company on all Policies except as indicated in the Schedule of Policies.

5. The Insured(s) signature(s) on both pages one and two hereof are genuine, the Insured has not paid for the scheduled Policies other than as described herein, the Insured(s) have received a copy of this Agreement, this Agreement is valid and enforceable and there are no defenses to it, the scheduled Policies are in full force and effect and the premiums indicated are correct for the term of the Policies, and all other information relating to the Policies and the Insured is complete and correct. None of the Policies have been financed on an installment payment plan provided by the insurance company(ies), or are noncancellable policy(ies), or policies written for a term of less than one year. The Agent recognizes the Insured's assignment of the unearned premiums and upon cancellation of any of the scheduled Policies agrees to pay promptly any unearned commissions to LENDER and to pay to LENDER the unearned premiums immediately upon receipt Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to LENDER hereunder. The Policies are not for personal, family or household purposes.

6. A proceeding in bankruptcy, receivership or insolvency has not been instituted by or against the Insured or if the Insured is the subject of such a proceeding, it is noted on the Agreement in the space in which the Insured's name and address is placed.

7. If the Agreement has been signed by the Agent on behalf of the Insured, the Agent has the authority to act in this capacity and the Agent has provided the Insured with a complete copy of this Agreement.

8. There are no exceptions to the Policies financed other than those indicated, and the Policy(ies) comply with LENDER's eligibility requirements.

9. The Cash Down Payment, and any installments due from the Insured which Agent has agreed to collect, have been collected from the Insured.

10. Agent is not an agent of LENDER and is not authorized to bind LENDER and has not made any representation to the contrary.

The Agent agrees to promptly remit all funds received from LENDER and the Insured for the financed Policies and due to the insurance company(ies) issuing such Policies. Agent shall be liable to LENDER for any losses, costs, damages or other expenses (including attorney's fees) incurred by LENDER or its assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, or otherwise arising out of the breach by Agent of this Agreement. Agent shall promptly notify LENDER of any unpaid increased premiums for the Policies.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| In re: | Chapter 7 |
| POWER HOME SOLAR, LLC, | Case No. 22-50228 |
| Debtor. | |

**NOTICE OF MOTION OF AFCO CREDIT CORPORATION FOR AN ORDER**
**GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO**
**11 U.S.C. § 362(d) AND BANKRUPTCY RULE 4001(a)**

**TAKE NOTICE** that on October 14, 2022, AFCO Premium Credit LLC ("AFCO"), by and through its undersigned counsel, filed with the United States Bankruptcy Court for the Western District of North Carolina the *Motion of AFCO Credit Corporation for an Order Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a)* (the "Motion").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to order the lifting of the automatic stay in favor of AFCO Premium Credit, LLC, or if you want the Court to consider your views on the motion, **then on or before fourteen (14) days from the date of this notice**, you or your attorney must do three things:

1. **File a written response with the Court requesting that the Court hold a hearing and explaining your position. File the response at:** '

   U.S. Bankruptcy Court
   Charles R. Jonas Federal Building
   Western District of North Carolina
   401 W. Trade Street, Suite 2500
   Charlotte, NC 28202

If you mail your request to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

2. **On or before the date stated above for written responses, you must also mail or fax a copy of your written request to:**
   Savannah Lavender

Howard, Stallings, From, Atkins, Angell, & Davis
P.O. Box 12347
Raleigh, NC 27605
Telephone: 919-821-7700
Facsimile: 919-821-7703
slavender@hsfh.com

3. **Attend the hearing scheduled November 7, 2022 at 9:30 AM** United States

Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Charlotte,

North Carolina 28202

**IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT
MAY GRANT THE RELIEF REQUESTED BY THE MOTION WITHOUT FURTHER
NOTICE OF HEARING.**

Dated:  October 14, 2022                    Respectfully submitted,

                                           **HOWARD, STALLING, FROM, ATKINS,
                                           ANGELL & DAVIS, P.A.**

                            By:    s/Savannah Elaine Lavender
                                   Savannah Elaine Lavender
                                   N.C. State Bar No. 57970
                                   James B. Angell
                                   N.C. State Bar No. 12844
                                   P.O. Box 12347
                                   Raleigh, NC 27605
                                   Telephone: 919-821-7700
                                   jangell@hsfh.com
                                   slavender@hsfh.com

                                   *Counsel to AFCO Credit Corporation*

- 2 -

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| In re:<br><br>POWER HOME SOLAR, LLC,<br><br>Debtor. | Chapter 7<br><br>Case No. 22-50228 |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies under penalty of perjury that she is over eighteen (18) years of age and the **<u>NOTICE AND MOTION FOR RELIEF FROM STAY</u>** was this day served upon the below named persons, parties and/or counsel by mailing, postage prepaid, first-class mail, a copy of such instruments to such persons, parties and/or counsel at the address shown below:

DATED: October 14, 2022

s/_ Savannah Elaine Lavender _____
Savannah Elaine Lavender, Esq.
P.O. Box 12347
Raleigh, NC 27605
Telephone: (919) 821-7700
Facsimile: (919) 821-7703

| | |
|---|---|
| Shelley Abel, Esquire<br>Bankruptcy Administrator<br>*Served via cm/ecf* | Joseph W. Grier, III<br>*Served via cm/ecf*<br>*Attorney for Debtor* |
| Power Home Solar, LLC<br>919 N Main St<br>Mooresville, NC 28115 | Jimmy R. Summerlin, Jr<br>*Served via cm/ecf*<br>*Chapter 7 Trustee* |