FILED & JUDGMENT ENTERED
Steven T. Salata

December 19 2022

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| **POWER HOME SOLAR, LLC,** | )  Case No. 22-50228 |
| | )  Chapter 7 |
| **Debtor.** | ) |

**ORDER ON TRUSTEE'S MOTION (A) FOR APPROVAL OF CARVE-OUT AGREEMENT WITH JPMORGAN CHASE, N.A., ET AL., FOR LIQUIDATION OF THE DEBTOR'S ASSETS; (B) FOR APPROVAL OF AUCTION MARKETING AGREEMENT; AND (C) TO SELL ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, ENCUMBRANCES, CLAIMS AND INTERESTS**

This matter is before the Court on the Motion (A) for Approval of Carve-Out Agreement with JPMorgan Chase, N.A., et al, for Liquidation of the Debtor's Assets; (B) For Approval of Auction Marketing Agreement; and (C) to Sell Assets Free and Clear of Any and All Liens, Encumbrances, Claims and Interests (Docket No. 165) (the "Motion") of Jimmy R. Summerlin, Jr., in his capacity as chapter 7 trustee in the above-captioned case (the "Trustee"), for approval of, among other things, a carve-out agreement with JPMorgan Chase, N.A. ("JPM"). Based on a consideration of the formal and informal comments on and objections to the Motion, and for good cause shown, the Court orders as follows:

1.  The Motion is granted as set forth herein.

2.  The Trustee's retention of Iron Horse and entry in the Auction Marketing Agreement as set forth in the Motion is hereby approved.

3. The Trustee's as-is, where-is sale of the Physical Assets as set forth in the Motion and the Auction Marketing Agreement, free and clear of all liens, encumbrances, claims and interests, is hereby approved without further order of the Court.

4. The Trustee's as-is, where-is sale of the IP Assets pursuant to negotiated offers and further motion(s) for confirmation of such sale(s), free and clear of all liens, encumbrances, claims and interests, is hereby approved.

5. The Trustee's entry into the Amended and Restated Term Sheet attached hereto as "Exhibit A" is hereby approved as set forth in this Order.

6. Notwithstanding anything contained in the Amended and Restated Term Sheet, neither this Order nor the Amended and Restated Term Sheet shall operate to alter or impair the rights of any creditor, group of creditors, or party in interest with respect to JPM or the Recoveries (as defined in the Amended and Restated Term Sheet).

7. Subject to the automatic stay, this Order neither prevents nor authorizes any consumers who purchased or otherwise acquired solar systems or units from the Debtor from pursuing any and all claims or causes of action that they have against any and all persons or entities, including claims, motions and adversary proceedings (including consumer class actions) that may be filed in this case.

8. Notwithstanding Federal Rule of Bankruptcy Procedures 4001(a)(3), the relief granted in this Order shall be immediate and the 14-day waiting period shall not apply.

SO ORDERED.

*This order has been signed electronically.*        *United States Bankruptcy Court*
*The Judge's signature and Court's seal*
*appear at the top of this Order.*

EXHIBIT "A"

## AMENDED AND RESTATED TERM SHEET

December 12, 2022

Pursuant to this Amended and Restated Term Sheet (the "Term Sheet"), JPMorgan Chase, N.A., solely in its capacity as Administrative Agent ("JPM"), on behalf of the lenders (collectively, the "Lenders") under that Credit Agreement, dated as of November 23, 2021 (the "Credit Agreement"), and Jimmy R. Summerlin, Jr., solely in his capacity as Chapter 7 Trustee (the "Trustee" and, together with JPM, the "Parties") of the estate (the "Estate") of Power Home Solar LLC d/b/a Pink Energy ("PHS" or the "Debtor") agree as set forth herein.

WHEREAS, on October 7, 2022 (the "Petition Date"), the Debtor commenced its chapter 7 bankruptcy case in the Bankruptcy Court for the Western District of North Carolina (the "Court"), captioned as *In re Power Home Solar, LLC*, No. 22-50228 (Bankr. W.D.N.C.) (the "Chapter 7 Case");

WHEREAS, as of the Petition Date, PHS was party to the Credit Agreement, as borrower thereunder, pursuant to which the Lenders provided PHS with various lines of credit in the aggregate amount of approximately $80,000,000.00;

WHEREAS, in connection with the execution of the Credit Agreement, the Debtor executed the Pledge Agreement and the Pledge and Security Agreement dated November 23, 2021 (together, the "Security Agreements"), in JPM's favor in its capacity as administrative agent under the Credit Agreement. JPM asserts that pursuant to the Security Agreements, the Debtor granted JPM a first-lien security interest in substantially all of its assets (the "Collateral"), securing the Debtor's obligations under the Credit Agreement. JPM asserts it perfected its lien on the Collateral by filing financing statements as required by applicable law;

WHEREAS, in order to create transparency and promote confidence by the creditors that issues in the Chapter 7 Case are being addressed in a fair and unbiased manner by the Trustee and/or the Court, JPM is willing to support the Trustee's efforts in maximizing the value of the Estate and share certain recoveries (the "Recoveries") as set forth below.

NOW, THEREFORE, the Parties hereby agree that the Trustee shall pursue the Recoveries—and the Parties shall share such Recoveries—in the manner set forth below:

| General Terms | |
|---|---|
| Definitions: | "Cash Collateral Stipulation" shall mean the *Stipulation and Agreed Order Authorizing Limited Use of Cash Collateral* entered on October 18, 2022, by the Court in the Chapter 7 Case [Docket No. 40].<br><br>"D&O Lawsuit" means any suit instituted by the Trustee, or any party on the Trustee's behalf, against the former members, managers, directors and/or officers of the Debtor in connection with the Chapter |

| | |
|---|---|
| | 7 Case.<br><br>"Generac Lawsuit" means the suit captioned *Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems, Inc.*, No. 22-cv-00043 (W.D. Va.), initiated August 1, 2022 by the Debtor against Generac Power Systems, Inc.<br><br>"Operating Assets" means all equipment, inventory, accounts receivable, intellectual property, and other Collateral used or consumed in the day-to-day operations of the Debtor's business prior to the Petition Date.<br><br>"Orbit Lawsuit" means the suit captioned *Power Home Solar, LLC v. Orbit Marketing, LLC, et al.*, No. 1:21-cv-910 (SDMI), initiated by the Debtor against Orbit Marketing LLC, et al.<br><br>"Named Lawsuits" means collectively, the D&O Lawsuit, the Generac Lawsuit, and the Orbit Lawsuit.<br><br>"Tax Refunds" means any amount due and owing to the Estate on after the filing of the Debtor's tax return(s) for any previous, current, or future tax returns on account of tax overpayments or tax credits.<br><br>"Titled Property" means any car, truck, trailer, or other vehicle owned by the Debtor as of the Petition Date which is required by law to be titled in an appropriate jurisdiction. |
| Operating Assets: | The Trustee shall retain Iron Horse Auction Company, Inc. and such other auctioneers[1] as the Trustee shall deem appropriate to assist in the liquidation of the physical Operating Assets and the Debtor's various intellectual property. For all Operating Assets subject to liquidation by an auctioneer, Recoveries shall be shared in accordance with the following waterfall (each on account of each lot of such assets sold, unless stated otherwise):<br><br>1. Auctioneer expenses and commissions;<br><br>2. Applicable sales and other taxes to the liquidation sale;<br><br>3. Claims of landlords at the various locations, whose statutory liens are finally determined by the Court (or by agreement of the Trustee and JPM) to be superior to those of JPM's liens (if any), unless the Trustee is able to reach an alternative arrangement with such landlord(s) with respect to such liens/claims; |

---

[1] The Trustee's retention of auctioneers hereunder shall be subject to approval by JPM not to be unreasonably withheld.

| | |
|---|---|
| | 4. JPM on behalf of amounts advanced under the Cash Collateral Stipulation (if any) with regards to the liquidation of such Collateral; |
| | 5. For residual amounts remaining thereafter, a Recovery of 30% to the Estate and 70% to JPM until the Estate has received $1,200,000.00 in the aggregate on account of the Operating Assets (i.e., not on a lot-by-lot basis); and |
| | 6. For any residual amounts after the Estate has received $1,200,000.00 on account of the aggregate Operating Assets liquidated, a Recovery of 20% to the Estate and 80% to JPM. |
| | For any Operating Assets not subject to liquidation, Recoveries shall be shared 30% to the Estate and 70% to JPM until the Estate has received $1,200,000.00 aggregate on account of the Operating Assets (including amounts received pursuant to the terms of the foregoing paragraph), and thereafter, the Recoveries shall be 20% to the Estate and 80% to JPM. |
| <u>Named Lawsuits</u>: | The Trustee shall engage, subject to Court approval, a reputable law firm (the "Outside Firm") to handle the Named Lawsuits on a contingent fee basis, for which retention the Trustee agrees to confer with JPM and JPM shall have consent rights with respect to such retention, with such consent not being unreasonably withheld.<br><br>The Trustee shall exercise his business judgment in making his determinations with respect to the Named Lawsuits, including choice of counsel, litigation strategy, and settlement authority. To the extent the Trustee and JPM disagree as to any material litigation matter in the Named Lawsuits, the Trustee and JPM, in consultation with the Bankruptcy Administrator, shall engage in good faith efforts to resolve the matter for no less than 7 calendar days, after which if no agreement has been reached, either party may file a motion to have the matter heard and resolved by the Court, which may be requested *in camera* depending on the nature of the dispute.<br><br>Recoveries pursuant to the Named Lawsuits shall be shared in accordance with the following waterfall:<br><br>1. Outside Firm's contingency fee and expenses plus any fees and expenses to any expert witnesses and other professionals necessitated by the nature and complexity of the Named Lawsuits;<br><br>2. JPM on behalf of amounts advanced under the Cash Collateral Stipulation (if any) with regard to paying any |

| | |
|---|---|
| | expenses and fees of the Outside Firm; and<br><br>3. For all remaining amounts, a recovery of 30% to the Estate and 70% to JPM.<br><br>It is further understood and agreed by the Parties that if any Challenge is finally determined in favor of the Trustee/Estate and one or more litigation claims are determined to be free and clear of the Lenders' security interests, JPM/Lenders shall have no further consent rights with regard to such litigation, provided, however, that JPM and/or Lenders may object to any application or motion for which court approval is required. |
| Tax Refunds: | For all Tax Refunds, a Recovery of 30% to the Estate and 70% to JPM, except that any Tax Refund attributable to any application by the Trustee on behalf of the Debtor for an Employee Retention Tax Credit ("ERTC") shall be divided as follows:<br><br>1. To the fees and expenses of Middleswarth, Bowers & Co., PLLC incurred by the Estate for the preparation of ERTC filings;<br><br>2. For residual amounts remaining thereafter, a Recovery of 50% to the Estate and 50% to JPM until the Estate has received $5,000,000.00 in the aggregate on account of the ERTC;<br><br>3. For any residual amounts after the Estate has received $5,000,000.00 on account of the ERTC, a Recovery of 20% to the Estate and 80% to JPM, until the Estate has received an $8,000,000.00 in the aggregate on account of the ERTC; and<br><br>4. For any residual amounts after the estate has received $8,000,000.00, the total remaining Recovery shall go to JPM.<br><br>For the avoidance of doubt, the Trustee's decision to seek or not to seek any portion of the ERTC shall be subject to JPM's consent, not to be unreasonably withheld. Further, if and in the event any ERTC application is audited by the IRS or other agency with jurisdiction and such audit is finally determined to require that the Debtor/Estate repay all or any portion of the funds received by the Estate on account of the ERTC, JPM and the Lenders will indemnify the Estate for all amounts paid to them on account of the portion of the ERTC to be repaid in the same percentages as such funds were distributed as provided by the terms hereof. For the avoidance of doubt, any such indemnification shall place the Estate and JPM in the same position as they would have been in under the terms of this Term Sheet had |

| | |
|---|---|
| | the portion of the ERTC not subject to disgorgement due to an audit been the original amount of the ERTC. The Trustee's decision to consent to any final determination as to any audit shall be subject to JPM's consent, not to be unreasonably withheld. |
| Titled Property: | Each leasing company shall liquidate its respective inventory, with any residual amounts going to the Estate free and clear of liens of JPM.<br><br>For all Titled Property owned by the Estate, the auctioneer retained to liquidate Operating Assets shall liquidate all such Titled Property with Recoveries subject to the following waterfall:<br><br>1. Auctioneer expenses and commissions;<br><br>2. Applicable sales and other taxes to the liquidation sale;<br><br>3. JPM on behalf of amounts advanced under the Cash Collateral Stipulation (if any) with regards to the liquidation of such Collateral;<br><br>4. For all remaining amounts thereafter, 100% to the Estate free and clear of liens of JPM. |
| Miscellaneous Terms: | |
| Lenders' Claims: | JPM will file one or more proofs of claim in the Chapter 7 Case in a commercially reasonable amount of time. The Parties agree that the Trustee must raise any issue with JPM's secured status and/or proof(s) of claim within 30 days from the date that JPM files its proof(s) of claim herein (such period, the "Objection Period"). If the Trustee fails to raise such an objection before the expiration of Objection Period, such failure shall, except in the case of actual fraud, be deemed a complete and formal release of the Trustee's rights to object to the proof(s) of claim (including the secured status thereof) of JPM, the Lenders, and all Released Parties[2]. Such release shall also include any ability for the Trustee to object to, or seek subordination of, JPM's and the other Lenders' secured and deficiency claim(s) filed against the Estate (if any). If the Trustee formally lodges any objection to JPM's secured status or its filed proof(s) of claim during the Objection Period, the Recoveries to JPM due under the terms of the Term Sheet shall not be disbursed until such objection is finally resolved by the Court.<br><br>With respect to the Trustee's ability to institute any Chapter 5 actions |

---

[2] As used herein, the term "Released Parties" shall include present and former officers, directors, executives, agents, attorneys, and employees, and all successors, predecessors, and assigns of each of the foregoing.

against JPM/the Lenders ("Other Trustee Actions"), the Trustee shall have 90 days from the later of (i) JPM filing its initial proof(s) of claim and (ii) the delivery by JPM of the transaction history related to the Credit Agreement and/or Security Agreements and other documentation requested by the Trustee prior to the filing of the proof(s) of claim and delivery of the transaction history, to institute any such Other Trustee Actions, which period may be extended upon the mutual agreement of JPM and the Trustee in 30 day increments (as potentially extended, the "Supplemental Challenge Period"); <u>provided</u>, <u>however</u>, the Trustee may request an initial 30-day extension without objection from JPM or the Lenders, but any subsequent requested extension thereafter may be subject to objection by JPM.  To the extent the Trustee requests any additional documentation after the Supplemental Challenge Period has commenced, JPM shall use best efforts to deliver such documentation promptly.

Notwithstanding the foregoing or anything else contained in this Term Sheet, nothing in this Term Sheet shall operate to alter or impair the rights of any creditor, group of creditors, or party in interest with respect to JPM or the Recoveries, and any order approving this Term Sheet shall so state.

It is understood and agreed between the Parties that if the Trustee or any other person or entity objects to the proof(s) of claim of JPM or the Lenders, files a motion or adversary proceeding against JPM or any of the Lenders, or otherwise challenges the nature, validity, priority, enforceability, or extent of JPM's or the Lenders' liens (collectively, a "Challenge"), the Trustee shall make no distribution or further distribution of proceeds of any Assets that are the subject of the Challenge until such Challenge is finally adjudicated by the court, including any appeal(s) thereof and/or the applicable time for appeal(s) has expired.  Following the expiration of the Objection Period and unless and until a Challenge, whether filed by the Trustee or any other person or entity, is filed and finally adjudicated, the Trustee shall seek authority to make distributions to JPM/Lenders in accordance with the Term Sheet at least every thirty (30) days provided the funds on hand for proposed distribution to JPM/Lenders exceeds $50,000.

It is further understood and agreed by the Parties that if any Challenge is finally determined in favor of the Trustee/Estate, proceeds of any Assets determined to be free and clear of the Lender's security interests shall be excluded from the Recoveries, as such term is defined in the Term Sheet, and shall be solely property of the Estate, unless otherwise ordered by the Court.  Such determination is without prejudice to the rights of JPM and the Lenders with respect to any distribution to unsecured creditors from

| | |
|---|---|
| | the proceeds of such Assets, as applicable.<br><br>By way of example, but without limitation, if the court finally determines that JPM/Lenders do not hold any security interest in the ERTC, all funds derived by the Estate on account of the ERTC shall be payable solely to the Estate and not divided in the percentages set forth in the Term Sheet.<br><br>By way of further example, but without limitation, if the Trustee asserts that JPM/Lenders' claimed security interest in the Generac Lawsuit is an avoidable transfer under any applicable law and the court finally determines that such security interest is, in fact, an avoidable transfer, all funds derived by the Estate on account of the Generac Lawsuit shall be payable solely to the Estate and not divided in the percentages set forth in the Term Sheet. |
| <u>Lenders' Recovery:</u> | JPM's recovery is limited to the full amount of its claim, plus contractually allowed default interest, and actual attorney's fees incurred by the various Lenders not to exceed 15% of JPM's aggregate claim amount.<br><br>Any and all funds derived from the Collateral after JPM/Lenders are paid the full amount of its claim are solely property of the Estate.<br><br>To the extent that JPM/Lenders assert a claim for interest and/or attorneys' fees JPM/Lenders such interest and/or attorneys' fees must meet the requirements of section 506(b) of the Bankruptcy Code. |
| <u>Estate's Expenses:</u> | For the avoidance of doubt, the proceeds received by the Estate hereunder shall be the sole contribution by the Lenders to the payment of Estate Expenses, and the Lenders shall bear no other costs with respect thereto unless expressly set forth herein.<br><br>As used herein, the term "Estate Expenses" includes all expenses of administering the Estate, including, but not limited to, those expenses related to the Trustee's fees, fees and costs related to Trustee's retention of counsel, payment of claims (administrative, priority, unsecured, etc.), and any other payments not specifically advanced by the Lenders under the Cash Collateral Stipulation in pursuit of the recoveries contemplated hereby.<br><br>For the avoidance of doubt, nothing herein shall be construed as an agreement by JPM on behalf of the Lenders to advance amounts exceeding the $135,997.04 currently held by JPM as cash collateral (as such amount may be reduced by advances already approved pursuant to the Cash Collateral Stipulation). |

| | |
|---|---|
| Trustee's and Parties' Reservation of Rights: | Subject to the limitations set forth in the section entitled *"Lenders Claims"*, above, the Trustee reserves all rights and remedies in relation to JPM and the Lenders and any proof(s) of claim that may be filed herein by either JPM or the Lenders, including, but without limitation, all rights and remedies under the Bankruptcy Code and/or Rules, and any other applicable federal or state law. Consistent with the purposes and intent of this Term Sheet, each of the parties hereto consents to the determination of any and all issues relating to the proof(s) of claim, including the determination of if and to what extent the proof(s) of claim may be secured by all or any portion of the Debtor's assets and/or whether any such alleged security interest is an avoidable transfer under the Bankruptcy Code and/or Rules or any other applicable federal or state law, by motion before the Bankruptcy Court and without the requirement of any party to file an adversary proceeding herein (although such right, together with all rights of appeal, is also preserved).<br><br>It is further understood and agreed between the Parties that JPM/Lenders do not have and shall not have any claim or security interest in the proceeds of any actions brought by the Trustee under Sections 544 to 553, inclusive, of the Bankruptcy Code (the "Chapter 5 Actions"), including proceeds of any Chapter 5 Actions that may be paid in whole or part by any insurance policy(ies) carried by or for the benefit of the Debtor or its insiders.<br><br>The provisions of the Term Sheet are not intended as and shall not be construed as a waiver of any right or remedy of any other person or entity with respect to filing a Challenge to the proof(s) of claim filed by JPM and/or the Lenders. |
| JPM's Reservation of Rights: | Unless otherwise expressly set forth herein, nothing in this Term Sheet shall be deemed a waiver or release of any rights of JPM in its individual capacity or as Administrative Agent under the Credit Agreement, nor shall it be considered an admission to any fact with respect thereto. JPM reserves all rights, including, without limitation, to file one or more proofs of claim in the Chapter 7 Case, including, for the avoidance of doubt, any deficiency claim to which it is entitled, and pursue collection on such proof of claim as part of the Chapter 7 Case and/or defend itself against any action instituted by the Trustee. |

*[SIGNATURE PAGE FOLLOWS]*

Dated:

/s/ *WHC*
William H. Canney
Authorized Officer
Chase
611 Woodard Avenue, 2nd Floor
Detroit, Michigan  48226
Telephone:  (313) 256-0517
Facsimile:  (313) 256-0355

*Authorized Signatory on behalf of
Lenders to the Credit Agreement*

Dated:

/s/ *Jimmy R. Summerlin, Jr.*
Jimmy R. Summerlin, Jr.
Young Morphis Bach and Taylor LLP
858 2nd Street NE, Suite 200
Hickory, North Carolina 28603
Telephone:  (828) 322-4663
Facsimile:  (828) 324-2431

*Chapter 7 Trustee*