**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| **In re:**<br><br>**Power Home Solar, LLC**<br><br>**Debtor(s).** | **Chapter 7**<br><br>**Case No. 22-50228** |

## ***EX PARTE* MOTION TO EMPLOY/SUBSTITUTE SPECIAL COUNSEL FOR THE TRUSTEE**

NOW COMES Jimmy R. Summerlin, Jr., the Trustee for the estate of the above captioned Chapter 7 bankruptcy (the "Trustee"), and moves the Court enter an order authorizing the retention and substitution of gunnercooke US LLP ("New Counsel") in the place of OFFIT KURMAN, P.A. ("Offit") as special counsel for the Trustee in relation to the Debtor's pending pre-petition suit against Generac Power Systems, Inc. (any any other related claims, collectively, the "Generac Claims"), pursuant to the terms of that certain Letter Agreement concerning Engagement of Offit Kurman, P.A.; Confirmation of Contingency Fee Agreement (the "Letter Agreement") and that certain Agreement Regarding Transition of Special Counsel & Settlement of Compensation Rights (the "Transition Agreement"). In support thereof, the Trustee respectfully asserts the following:

1. Applicant is the duly qualified and acting trustee in this case.

2. To perform his duties as Trustee in this case and in particular the pursuit of the Generac Claims, the Trustee previously requested (See Docket No. 717) and this Court approved the (See Docket No. 718) Trustee's retention of the law firm Offit Kurman, PA as special counsel for the Trustee in relation to the Generac Claims pursuant to the terms of the Letter Agreement attached as Exhibit "A" hereto.

3. The Trustee's lead counsel at Offit throughout this proceeding has been Mr. Elliot Rosner. On or about October 1, 2026, Mr. Rosner left Offit to join the law firm gunnercooke US LLP. Mr. Rosner and the Trustee desire that Mr. Rosner continue his work representing the Estate and the Trustee in the Generac Claims.

4. In completing Mr. Rosner's transition from Offit, Offit and gunnercooke US LLP have reached an agreement on the division of any compensation that may become due pursuant to the Letter Agreement. That agreement, as set forth in the Transition Agreement, a copy of which is attached hereto as Exhibit "B", provides that (a) the previously approved contingency fee arrangement will remain in place and (b) that Offit will be compensated not more than $400,000.00 from any Recovery. The transition from Offit to New Counsel does not create additional fees owing by the Estate and both Offit and New Counsel will be compensated solely upon the terms of the Letter Agreement. The Transition Agreement was prepared for the purposes of determining the split of any contingency fee that may become owing between Offit and New Counsel.

5. The Trustee requires counsel with both the capacity and skill to represent the Estate's interest in court and/or arbitration, and related discovery and proceedings.

6. Pursuant to that certain Order granting the Trustee's prior motion to approve carve-out agreement (Docket No. 232, the "Carve-Out Order"), as amended (See Motion, Docket No. 653; and Notice of Order, Docket No. 673), the Trustee agreed to seek retention of counsel for the "Named Lawsuits", which included the Generac Claims, on a contingency fee basis.

7. For the foregoing and all other necessary and proper purposes, the Trustee desires to retain and substitute New Counsel as special counsel for the Trustee pursuant to the Letter Agreement with any compensation to be divided between Offit and New Counsel pursuant to the Transition Agreement.

8. Based upon the Declaration attached hereto as Exhibit "C", applicant believes that New Counsel and its members and associates, do not hold or represent any interest adverse to that of your applicant or the debtor estate and that said law firm is a disinterested person within the meaning of 11 U.S.C. § 101. It is contemplated that said attorneys will seek compensation based upon the contingency fee structure set forth in the Letter Agreement, subject to the approval of this Court.

9. The Court has power to authorize employment of New Counsel pursuant to 11 U.S.C. § 327(a) which states in pertinent part:

> [T]he trustee, with the court's approval, may employ one or more attorneys or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

WHEREFORE, the Trustee prays that he be authorized to employ and substitute New Counsel as special counsel for the Generac Claims pursuant to the contingency fee terms set forth in the Letter Agreement and the Transition Agreement.

Dated: October 4, 2026.

YOUNG, MORPHIS, BACH & TAYLOR, LLP

/s/ Jimmy R. Summerlin, Jr

Jimmy R. Summerlin, Jr.
N.C. State Bar No. 31819
P.O. Drawer 2428
Hickory, NC 28601
Telephone: 828-322-4663
Attorneys for the Trustee

Offit | Kurman®
Attorneys At Law

Trust. Knowledge. Confidence.

EXHIBIT "A"

**Elliot J. Rosner, Esq.**
**(646) 509-2491**
**Elliot.Rosner@offitkurman.com**

July 16, 2024

Power Home Solar, LLC
Jimmy R. Summerlin, Jr., Trustee
JimmyS@hickorylaw.com
c/o Young, Morphis, Bach & Taylor, LLP
858 2nd Street NE, Suite 200
Hickory, North Carolina 28603

Re: Engagement of Offit Kurman, P.A.; Confirmation of Contingency Fee Arrangement

Dear Mr. Summerlin:

Thank you for entrusting your legal needs (in your capacity as trustee for Power Home Solar, LLC) to Offit Kurman, P.A. The purpose of this letter is to confirm the terms of Power Home Solar, LLC's engagement of our services. Our firm has agreed to represent Power Home Solar, LLC ("PHS") in connection with the arbitration of its claims against Generac Power Systems, Inc. before the American Arbitration Association in New York City. If you (the terms "you" or "your" hereinafter referring to you in your capacity as Trustee for PHS) desire us to provide any legal services not described in this paragraph, a separate retainer agreement will be required.

You have agreed that we will undertake this engagement on a contingency fee basis. Unless our services are terminated prior to a recovery of damages related to your claim, the contingency fee would only be due and paid in the event you recover damages or other amounts as a result of the claim.

Our fee will be based upon all amounts recovered on your behalf, including actual damages, punitive or exemplary damages, treble damages, interest, and attorneys' fees, but excluding any recovery of costs awarded to reimburse out-of-pocket expenses incurred in bringing your claims. Our fee will be twenty-five percent (25%) of all amounts recovered on your behalf by any settlement(s) made after the filing of the Demand for Arbitration with the American Arbitration Association ("AAA") but before the commencement of the arbitration hearing, and thirty-three and one-third percent (33.33%) of all amounts recovered on your behalf by any settlement(s) or arbitration awards obtained after the commencement of the arbitration hearing.

In addition to any contingency fee we earn in the event of a recovery, you are responsible for out-of-pocket expenses incurred by Offit Kurman. We may advance certain out-of-pocket expenses and defer billing for them until the conclusion of this matter, in

which event you agree that we may deduct and retain those amounts from any recovery, or you will pay them at the time of any recovery, in addition to the contingency fee described above. Notwithstanding anything else contained herein, you agree to advance the filing fees charged by the AAA, as well as the fees charged by any third-party expert that we agree to retain to represent PHS in the arbitration proceedings.

Should you terminate our services without cause prior to a recovery of damages related to your claim, you will be responsible for paying Offit Kurman either: (a) on an hourly basis for all work performed prior to your termination of our services based upon the actual time spent on your account by our attorneys and other professional staff at the firm's hourly rates (with such amounts to be due and payable at the time you terminate our services irrespective of the ultimate outcome of your claim), or (b) an appropriate percentage of the contingency fee set forth herein based on the work performed by Offit Kurman and the work performed by a successor firm between the termination of services and the recovery[1]. Offit Kurman shall, at its sole discretion, select one of the two aforementioned options at or around the time of such termination without cause. In either event, you will be responsible for reimbursing Offit Kurman for all expenses incurred on your behalf at the time of such termination. Should Offit Kurman withdraw from representation or be terminated with cause, Offit Kurman will only be entitled to a quantum meruit award for services rendered payable upon your recovery of damages or other amounts as a result of the claim.

While we will represent you throughout the course of this arbitration matter, our representation of you in this matter pursuant to this engagement letter does not include representation of PHS in any court proceedings related to the arbitration.

By signing below you acknowledge that you have reviewed and accepted the fee arrangement described in this letter, as well as **Offit Kurman's *Terms and Conditions of Representation* -** available online at www.offitkurman.com/ContingentTerms or in hard copy at your request, which are expressly incorporated herein and updated on an annual basis (though to the extent there are any inconsistencies between such Terms and Conditions and this engagement letter, this engagement letter will control). This agreement will remain in effect for future engagements of our services unless and until it is superseded by a new written agreement.

[1] If you and Offit Kurman cannot agree on the amount of the "appropriate percentage," the matter shall be determined by a state or federal court located in New York City and applying the laws of the State of New York.

Our firm and its attorneys shall not be deemed to have been retained, engaged, or employed by you, unless and until this engagement letter is signed and delivered to the firm, notwithstanding any action and/or work already undertaken by this firm.

Our firm acknowledges that the terms of this engagement and all fees and expenses payable hereunder are subject to the approval of the United States Bankruptcy Court for the Western District of North Carolina.

On behalf of the firm, and holding aside the formality of this letter, we look forward to working with you.

Sincerely,

**OFFIT KURMAN, P.A.**

By Elliot J. Rosner
ELLIOT J. ROSNER, ESQ.

cc: Client Engagement Dept.

Read & Accepted by:

POWER HOME SOLAR, LLC

Jimmy R. Summerlin, Jr. July 29,2024
By: Jimmy R. Summerlin, Jr., *Trustee* [DATE]

***Please sign and return this letter within 5 business days of receipt and keep a copy for your records.***

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| **In re:**<br><br>**Power Home Solar, LLC**<br><br>**Debtor(s).** | **Chapter 7**<br><br>**Case No. 22-50228** |

**DECLARATION IN SUPPORT OF**
**MOTION TO EMPLOY SPECIAL COUNSEL FOR THE TRUSTEE**

I, the undersigned, declare under penalty of perjury as follows:

1. I am an attorney with the law firm Offit Kurman, P.A. and am duly admitted to practice in the State of New York.

2. Neither I, nor any partner, counsel, or associate of Offit Kurman, P.A. has a known connection to the debtor or any other party in interest to the above captioned case.

3. Similarly, neither I, nor any partner, counsel, or associate of Offit Kurman, P.A. represents a known adverse interest to the debtor, the bankruptcy estate, or any other party in interest to the above captioned case.

4. Insofar as I have been able to ascertain, Offit Kurman, P.A. is a disinterested person pursuant to Bankruptcy Code Sections 327, 330, and 101(14).

Dated: July 29, 2024.

/s/ Elliot J. Rosner
Elliot J. Rosner, Esq.
N.Y. State Bar No. 4907937
Offit Kurman, P.A.
500 Madison Ave., 6th Floor
New York, NY 10022

# AGREEMENT REGARDING TRANSITION OF SPECIAL COUNSEL & SETTLEMENT OF COMPENSATION RIGHTS

EXHIBIT "B"

This Agreement Regarding Transition of Special Counsel and Settlement of Compensation Rights (this "Agreement") is entered into as of October 1, 2026 (the "Effective Date") by and among (i) Power Home Solar, LLC, by Jimmy R. Summerlin, Jr., solely in his capacity as Chapter 7 trustee (the "Trustee") for the bankruptcy estate of Power Home Solar, LLC ("PHS" or the "Client"); (ii) Offit Kurman, P.A. ("Offit"); and (iii) gunnercooke US LLP ("New Counsel"). PHS, Offit, and New Counsel are referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, pursuant to an engagement letter dated July 16, 2024, accepted July 29, 2024 (the "Existing Engagement Letter"), PHS retained Offit to represent PHS in connection with the arbitration of PHS's claims against Generac Power Systems, Inc. before the American Arbitration Association in New York City (the "Arbitration Matter");

WHEREAS, the Existing Engagement Letter provides for a contingent fee equal to twenty-five percent (25%) of all amounts recovered on PHS's behalf by any settlement made after the filing of the Demand for Arbitration but before commencement of the arbitration hearing, and thirty-three and one-third percent (33.33%) of all amounts recovered on PHS's behalf by any settlement or arbitration award obtained after commencement of the arbitration hearing, in each case calculated as stated in the Existing Engagement Letter;

WHEREAS, by order entered July 31, 2024 in In re Power Home Solar, LLC, Case No. 22-50228, the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court") authorized the Trustee to employ Offit as special counsel in relation to the Generac Claims, with compensation in accordance with the Existing Engagement Letter as may be allowed by the Bankruptcy Court;

WHEREAS, New Counsel has completed its conflicts review, has determined that it is able to undertake the representation, and, subject to all required approvals, has agreed to be substituted for Offit and to assume primary responsibility for the Arbitration Matter, and the Parties wish to preserve the Client's existing fee arrangement; and

WHEREAS, the Parties wish to resolve and settle Offit's existing contractual and other rights arising from the Existing Engagement Letter and services previously rendered, to establish the separate compensation terms applicable to New Counsel's future services, and to ensure that the aggregate contingent compensation chargeable to PHS does not exceed the amount otherwise payable under the Existing Engagement Letter.

NOW, THEREFORE, in consideration of the mutual promises set forth below, the Parties agree as follows:

### 1. Incorporation and Controlling Terms

**1.1** The Recitals are incorporated into this Agreement. A complete copy of the Existing Engagement Letter shall be attached as Exhibit A.

**1.2** Except as expressly modified by this Agreement, the economic terms governing the amount and calculation of the contingent fee payable by PHS in the Arbitration Matter shall remain exactly as provided in the Existing Engagement Letter. This Agreement does not increase the fee payable by PHS or alter the recoveries included in, or excluded from, the fee calculation.

**1.3** If this Agreement conflicts with the Existing Engagement Letter in any material manner, this Agreement controls. In all other respects, the Existing Engagement Letter remains applicable to the extent consistent with New Counsel's assumption of the representation and applicable law.

**2. Substitution and Scope of Representation**

**2.1** New Counsel has agreed to undertake the representation and, on the Transition Date, shall assume primary responsibility for representing PHS in the Arbitration Matter. New Counsel's representation is limited to the Arbitration Matter and does not include any court proceeding related to the arbitration unless PHS and New Counsel separately agree in writing and obtain any required approval.

**2.2** "Transition Date" means the first date on or after the Effective Date by which all of the following have occurred: (a) this Agreement has been executed by all Parties; (b) any required substitution, appearance, or notice has been filed with and accepted by the American Arbitration Association; and (c) the Bankruptcy Court has issued an order approving this Agreement, the compromise of Offit's compensation rights, New Counsel's employment and compensation arrangement, and the direct-payment and aggregate-cap provisions substantially as provided herein (the "Approval Order").

**2.3** Until the Transition Date, Offit remains counsel of record to the extent required by applicable rules and orders. After the Transition Date, Offit shall have no obligation to perform additional substantive work in the Arbitration Matter except reasonable transition assistance requested by New Counsel or the Client, or as otherwise required by applicable law, tribunal rule, or court order.

**3. Client Direction and Consent**

**3.1** The Client knowingly and voluntarily directs and consents to the substitution of New Counsel for Offit, subject to the conditions in this Agreement. The Client authorizes Offit to provide the complete client file and information reasonably necessary for the representation to New Counsel, subject to appropriate safeguards for privileged, confidential, protected, or sealed material.

**3.2** The Client acknowledges that it has been informed in writing of the contemplated Offit Settlement Fee and the fee that would be due to New Counsel under this Agreement, that the aggregate fee will not exceed the fee calculated under the Existing Engagement Letter, and that the effectiveness and enforceability of all compensation arrangements remain subject to approval and allowance by the Bankruptcy Court.

**4. Contingent Fee and Settlement of Compensation Rights**

**4.1** The total contingent fee generated by any Recovery in the Arbitration Matter (the "Contingent Fee") shall be calculated exactly in accordance with the Existing Engagement Letter. "Recovery" means any amount on which a fee is payable under the Existing Engagement Letter.

**4.2** <u>Settlement of Offit Compensation Rights</u>. Subject to entry of an Approval Order, Offit's rights arising from the Existing Engagement Letter, the termination or transition of its engagement, and the services rendered by Offit in connection with the Arbitration Matter shall be compromised and settled in an amount equal to the lesser of: (a) Four Hundred Thousand Dollars ($400,000); or (b) the aggregate contingent compensation generated by a Recovery and approved and allowed by the Bankruptcy Court (the "Offit Settlement Amount"). The Offit Settlement Amount shall be payable only upon and from a Recovery and shall not constitute a presently payable administrative expense or other obligation of the estate if no Recovery occurs. The Trustee has determined, in the exercise of his business judgment and subject to Bankruptcy Court approval, and the Parties all agree, that the Offit Settlement Amount represents a fair and reasonable compromise and is in the best interests of the estate, taking into account all of the circumstances including but not limited to Offit's contractual termination rights, Offit's potential claim to an appropriate percentage of the contingency fee, any

potential hourly or quantum meruit claim, the risk, expense, and uncertainty of litigating those rights, and Offit's waiver of any reimbursable expenses under Section 5.1.

**4.3** Compensation of New Counsel. Subject to the Bankruptcy Court's approval of New Counsel's employment and compensation terms, New Counsel shall be entitled to contingent compensation equal to the aggregate contingent compensation calculated under the Existing Engagement Letter, less the Offit Settlement Amount. New Counsel shall have no right to receive any portion of the Offit Settlement Amount.

**4.4** Aggregate Cap and Direct Payment. Under no circumstances shall the aggregate compensation allowed and paid to Offit and New Counsel exceed the contingent fee that would have been payable under the Existing Engagement Letter. The Trustee, or an escrow or disbursing agent approved by the Bankruptcy Court, shall pay each firm's separately approved compensation directly to that firm. Neither Offit nor New Counsel shall receive compensation belonging to the other firm or remit, transfer, share, or divide compensation with the other firm.

**4.5** Resolution of Existing Rights. Upon the issuance of an Approval Order, the Offit Settlement Amount shall constitute the full and complete resolution of any right Offit may have arising from the Existing Engagement Letter, the transition of counsel, work previously performed, quantum meruit, an attorney's lien, reimbursable expenses, or otherwise. Offit shall not seek compensation from PHS or the estate in excess of the Offit Settlement Amount.

**4.6** No Sharing of Compensation. The Parties intend that the compensation separately payable to Offit and New Counsel constitute separate compensation obligations approved and allowed by the Bankruptcy Court, and not the sharing of compensation between professionals. Nothing in this Agreement requires or authorizes either firm to share, transfer, or remit compensation to the other in violation of 11 U.S.C. § 504. If the Bankruptcy Court determines that any provision would violate or implicate 11 U.S.C. § 504, that provision shall not become effective unless modified by written agreement and court order in a manner consistent with applicable law.

**4.7** No Party makes any representation that a Recovery will occur or that any particular amount will be recovered, earned, approved, allowed, collected, or distributed.

**5. Expenses and Costs**

**5.1** Offit waives all claims for reimbursement of expenses incurred through the Transition Date that would have been payable or reimbursable in accordance with the Existing Engagement Letter as additional consideration for the compromise embodied in this Agreement.

**5.2** All out-of-pocket expenses incurred by New Counsel on or after the Transition Date shall be governed by the Existing Engagement Letter as applied to New Counsel, except to the extent New Counsel and the Client enter into a further written arrangement approved by the Bankruptcy Court that does not alter the contingent fee arrangement preserved by this Agreement.

**5.3** Reimbursement of New Counsel expenses is separate from, and shall not reduce, the Offit Settlement Amount or the compensation due to New Counsel under this Agreement, unless the Bankruptcy Court orders otherwise.

**6. Receipt, Accounting, and Distribution of Funds**

**6.1** Any Party receiving a Recovery or Contingent Fee shall hold disputed or unapportioned funds in an appropriate trust or escrow account as required by applicable law and shall promptly notify the other Parties.

**6.2** Unless the Bankruptcy Court directs otherwise, the firm receiving the Recovery shall prepare a written closing statement showing: (a) the gross Recovery; (b) any excluded reimbursement of costs;

(c) the applicable contingent-fee percentage; (d) the resulting Contingent Fee; (e) reimbursable expenses; (f) the amounts payable to Offit and New Counsel under Section 4; and (g) the net amount payable to the Client.

**6.3** No Contingent Fee shall be distributed except to the extent approved and allowed by the Bankruptcy Court. The Parties shall cooperate in submitting any fee applications, disclosures, affidavits, proposed orders, or other materials reasonably required for approval and allowance.

**7. Transition of File and Cooperation**

**7.1** Promptly after execution of this Agreement, and subject to applicable law, Offit shall reasonably cooperate with New Counsel to transfer the client file, work product, pleadings, discovery, correspondence, exhibits, electronically stored information, deadlines, and other materials reasonably necessary to avoid prejudice to PHS.

**7.2** Offit may retain a copy of the file for recordkeeping, defense of claims, compliance obligations, and enforcement of this Agreement, subject to continuing duties of confidentiality. Each firm shall use reasonable measures to protect privileged and confidential materials.

**7.3** New Counsel shall be solely responsible for evaluating the Arbitration Matter, determining future strategy, monitoring deadlines after the Transition Date, and performing future legal services. Nothing in this Agreement requires or permits Offit to supervise or control New Counsel's professional judgment.

**8. Professional Independence and Responsibility**

**8.1** Each firm shall exercise independent professional judgment and comply with all applicable ethical rules, tribunal rules, and court orders. Nothing in this Agreement permits either firm to direct or regulate the other firm's professional judgment on behalf of the Client.

**8.2** Offit is responsible for its services performed before the Transition Date and for the reasonable transition obligations expressly stated in this Agreement. New Counsel is responsible for services performed on and after the Transition Date. The compensation payable to each firm reflects its separately approved rights and obligations and is not based upon a referral or an agreement to divide compensation between firms. For clarity, New Counsel does not assume Offit's liabilities, malpractice exposure, unpaid vendor obligations, employment obligations, taxes, or other liabilities arising before the Transition Date. New Counsel is not a successor to Offit for any purpose other than the Client representation expressly assumed upon the Transition Date.

**9. Bankruptcy Court Approval; No Effect Before Approval**

**9.1** This Agreement, the effectiveness of New Counsel's engagement and assumption of the representation, and all compensation and settlement provisions are expressly subject to authorization, approval, and allowance by the Bankruptcy Court. Upon full execution of this Agreement, even if prior to the Effective Date, the Trustee shall promptly seek entry of an Approval Order.

**9.2** If the Bankruptcy Court does not approve the substitution and settlement substantially as stated in this Agreement, the Parties shall meet and confer in good faith concerning a lawful alternative. Unless and until a written alternative is executed and approved, no Party waives any rights it may have under the Existing Engagement Letter or applicable law, except that the Client shall not be obligated to pay aggregate attorneys' fees exceeding the amount calculated under the Existing Engagement Letter.

**10. Representations**

**10.1** Each signatory represents that he or she is authorized to execute this Agreement on behalf of the identified Party, subject, in the Trustee's case, to all required Bankruptcy Court approvals.

**10.2** New Counsel represents that it has conducted an appropriate conflicts review, has determined that it is able to undertake the representation, and has accepted the engagement subject to the conditions and required approvals set forth in this Agreement. New Counsel further represents that it has made, or will timely make, all disclosures required by the Bankruptcy Code, Bankruptcy Rules, applicable professional-conduct rules, and orders of the Bankruptcy Court.

**10.3** Each Party acknowledges that it has had the opportunity to review this Agreement with independent counsel of its choosing and enters into it voluntarily.

**11. No Admission; Preservation of Privilege**

**11.1** This Agreement is a consensual transition and settlement arrangement. It is not an admission by any Party concerning cause for termination, the value of services performed, the merits or value of the Arbitration Matter, or any entitlement that would exist absent this Agreement.

**11.2** No disclosure made to implement the transition is intended to waive attorney-client privilege, work-product protection, common-interest protection, or any other applicable protection. The Parties shall reasonably cooperate to preserve such protections.

**12. Notices**

**12.1** Notices under this Agreement shall be in writing and delivered by email and nationally recognized overnight delivery to the addresses set forth below, or to any replacement address designated by written notice. Notice is effective upon confirmed email transmission, provided that a duplicate is sent by overnight delivery on the same business day.

**If to PHS:** Jimmy R. Summerlin, Jr., Chapter 7 Trustee
c/o Young, Morphis, Bach & Taylor, LLP
858 2nd Street NE, Suite 200
Hickory, North Carolina 28603
Email: JimmyS@hickorylaw.com

**If to Offit:** Offit Kurman, P.A.
Attn: Russell B. Berger, Esq.
7021 Columbia Gateway Drive, Suite 200
Columbia, Maryland 21046
Email: rberger@offitkurman.com

**If to New Counsel:** gunnercooke US LLP
Attn: Elliot J. Rosner, Esq.
475 Park Avenue South, Suite 2300
New York, New York 10016
Email: elliot.rosner@gunnercooke.com

**13. Miscellaneous**

**13.1** This Agreement and the Existing Engagement Letter, as modified by this Agreement, constitute the entire agreement among the Parties regarding the transition of the Arbitration Matter and settlement of claims relating to the Contingent Fee, and supersede prior oral or written discussions on those subjects.

**13.2** This Agreement may be amended only by a writing signed by all Parties and approved by the Bankruptcy Court to the extent required.

**13.3** This Agreement shall be governed by the laws of the State of New York, without regard to conflict-of-laws principles, except to the extent federal bankruptcy law governs. Any dispute concerning this

Agreement shall be submitted to the Bankruptcy Court to the extent it has jurisdiction. If the Bankruptcy Court lacks or declines jurisdiction, the dispute shall be brought exclusively in a state or federal court located in New York City, and each Party consents to that jurisdiction and venue.

**13.4** No waiver is effective unless in writing. A waiver on one occasion is not a waiver on another occasion. If any provision is held unenforceable, it shall be modified to the minimum extent necessary to make it enforceable, and the remaining provisions shall continue in effect.

**13.5** This Agreement binds and benefits the Parties and their respective permitted successors and assigns. Neither firm may assign its rights under this Agreement without the Client's written consent and any required Bankruptcy Court approval, except to a successor to substantially all of that firm's relevant practice or assets that assumes its obligations in writing.

**13.6** This Agreement may be executed in counterparts and by electronic signature, each of which is deemed an original and all of which constitute one instrument.

**13.7** Headings are for convenience only. "Including" means "including without limitation." The Parties jointly participated in drafting this Agreement, and no presumption shall arise against any Party as drafter.

**[SIGNATURE PAGE FOLLOWS]**

**SIGNATURE PAGE**

*Agreement Regarding Transition of Special Counsel and Settlement of Compensation Rights*

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates written below.

**POWER HOME SOLAR, LLC, by and through its Chapter 7 Trustee**

By: ____________________________________ Date: ___________________

Jimmy R. Summerlin, Jr., Chapter 7 Trustee

**OFFIT KURMAN, P.A.**

By: ____________________________________ Date: ___________________

Name: Russell B. Berger

Title: General Counsel

**GUNNERCOOKE US LLP**

By: ____________________________________ Date: ___________________

Name: Karen Connors

Title: Risk, Compliance, and Legal Operations Manager

& by: ____________________________________ Date: ___________________

Name: Elliot J. Rosner

Title: Partner

EXHIBIT "C"

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **Power Home Solar, LLC** | **Case No. 22-50228** |
| **Debtor(s).** | |

**DECLARATION IN SUPPORT OF**
**MOTION TO APPOINT ATTORNEY FOR THE TRUSTEE**

I, the undersigned, declare under penalty of perjury as follows:

1. I am an attorney with the law firm **gunnercooke US LLP** ("gunnercooke").

2. To the best of my knowledge, after diligent inquiry, neither I, gunnercooke, nor any partner, counsel, or associate thereof has a known connection to the debtor or any other party in interest to the above captioned case.

3. Similarly, to the best of my knowledge, after diligent inquiry, neither I, gunnercooke,, nor any partner, counsel, or associate thereof represents a known adverse interest to the debtor, the bankruptcy estate, or any other party in interest to the above captioned case.

4. Insofar as I have been able to ascertain, gunnercooke is a disinterested person pursuant to Bankruptcy Code Sections 327, 330, and 101(14).

Dated: September 30, 2026.

Sign: Karen Connors

Print Name: Karen Connors

Title: Authorized Person

Date: September 30, 2026

**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **Power Home Solar, LLC** | **Case No. 22-50228** |
| **Debtor(s).** | |

**CERTIFICATE OF SERVICE**

I hereby certify that copies of the *Ex Parte Motion to Employ Special Counsel for the Trustee* and Declaration in support thereof were served by electronic notification on those parties registered with the United States Bankruptcy Court, Western District of North Carolina ECF system to receive notices for this case on October 4, 2026.

Dated: October 4, 2026.

YOUNG, MORPHIS, BACH & TAYLOR, LLP

/s/ Jimmy R. Summerlin, Jr
Jimmy R. Summerlin, Jr.
N.C. State Bar No. 31819
P.O. Drawer 2428
Hickory, NC 28601
Telephone: 828-322-4663
Attorneys for the Trustee